Present:  All the Justices

CENTREVILLE CAR CARE, INC.
                                        OPINION BY
v.  Record No. 010786        JUSTICE LAWRENCE L. KOONTZ, JR.
                                       March 1, 2002
NORTH AMERICAN MORTGAGE CO., ET AL.

              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                      Kathleen H. MacKay, Judge


     In this appeal, we consider whether the chancellor properly

applied the equitable doctrine of subrogation to a purchase

money deed of trust.  In granting subrogation, the chancellor

gave the subrogated deed of trust priority over a former second

deed of trust to the extent that funds from the loan secured by

the subrogated deed of trust were used to extinguish a former

first deed of trust.

                            BACKGROUND

     The essential facts are not in dispute and, in large part,

were stipulated by the parties.  On September 3, 1996, Margaret

M. Lynch purchased, as sole owner, a residential property in

Fairfax County ("the property") for $210,000.  Lynch financed

$199,500 of the purchase price with a loan from Financial

Mortgage, Inc.  This loan was evidenced by a promissory note of

even date secured by a first deed of trust on the property.

Financial Mortgage immediately assigned this note and deed of

trust to Fleet Mortgage Corporation.

On October 7, 1996, Lynch and her husband, Abed E. Higassi, borrowed $150,000 from B&T Car Care, Inc. This loan was evidenced by a promissory note of even date secured by a second deed of trust on the property.[1] B&T Car Care, Inc. subsequently merged with Centreville Car Care, Inc. (Centreville), and Centreville, the surviving corporation, became the holder of this promissory note and the beneficiary of this deed of trust.

On March 10, 2000, Lynch conveyed the property to Mohammed Bouzghaia and Corrina Y. Bouzghaia, husband and wife, for $210,000. The Bouzghaias financed $208,250 of the purchase price with a loan from North American Mortgage Company. The loan was evidenced by a promissory note of even date to be secured by a first deed of trust on the property. Metropolitan Real Estate Settlements, Inc., the settlement agent for North American Mortgage, caused a title search to be performed as to the state of the title of the property. The title examiner, however, failed to discover and disclose the existence of Centreville's second deed of trust. Thus, unbeknown to the Bouzghaias and North American Mortgage, the lien of the deed of trust in favor of North American Mortgage when recorded on March 10, 2000, was inferior in position of priority to the lien of

---

[1] All the aforementioned deeds of trust and the assignment were properly recorded in the appropriate land records of Fairfax County.

Centreville's deed of trust according to the Fairfax County land records.

During the process of closing the loan from North American Mortgage to the Bouzghaias for the purchase of the property, the settlement agent disbursed $198,928.07 from the loan proceeds to Fleet Mortgage in full satisfaction of the note secured by its first deed of trust. The settlement agent also disbursed $3,953.93 to Lynch from the funds available at the closing. On April 28, 2000, Fleet Mortgage recorded a certificate of satisfaction in the land records of Fairfax County, extinguishing its first deed of trust. Accordingly, what had been a second deed of trust in favor of Centreville advanced to the first deed of trust position. Thereafter, Centreville advised the trustee under its deed of trust that Lynch and Higassi were in default on their payments on their secured note, and the trustee advertised a trustee's sale of the property for August 29, 2000.

On August 23, 2000, North American Mortgage and the trustee under its deed of trust filed a bill of complaint in the Circuit Court of Fairfax County against Centreville, the trustee under its deed of trust, and the Bouzghaias seeking equitable subrogation. North American Mortgage contended that its deed of trust should be subrogated to the priority position of the original first deed of trust in favor of Fleet Mortgage.

3

Centreville filed its grounds of defense, and the parties voluntarily stayed the advertised trustee's sale pending the chancellor's resolution of the issue of the priority of the liens in question.

Relying primarily upon Federal Land Bank of Baltimore v. Joynes, 179 Va. 394, 18 S.E.2d 917 (1942) (hereinafter, Federal Land Bank), and Bankers Loan & Investment Co. v. Hornish, 94 Va. 608, 27 S.E. 459 (1897) (hereinafter, Bankers Loan), North American Mortgage asserted before the chancellor that its deed of trust should be subrogated to the priority position of Fleet Mortgage's deed of trust in the amount of $198,928.07, representing the exact amount of the proceeds from its loan to the Bouzghaias that was used to satisfy the lien of Fleet Mortgage's deed of trust. North American Mortgage contended that this would be equitable because granting subrogation would leave the lien of Centreville's deed of trust essentially in the same position of priority it had occupied prior to the conveyance of the property to the Bouzghaias and, thus, would not prejudice Centreville. Centreville responded that granting subrogation would not be equitable under the particular facts of this case. Rather, Centreville contended, among other things, that granting subrogation would result in prejudice to it and to the Bouzghaias, that North American Mortgage was the party in a better position to avoid a loss, and that North American

4

Mortgage was the party whose negligent title search failed to discover and disclose Centreville's lien.

In an opinion letter dated October 16, 2000, the chancellor initially concluded that negligence on the part of North American Mortgage or its agent in failing to discover and disclose Centreville's deed of trust did not automatically bar application of the equitable doctrine of subrogation. The chancellor further concluded, based apparently upon the original purchase price of $210,000 and the first lien amount of $199,500 in favor of Fleet Mortgage, that Centreville's predecessor in interest knew that its loan was "essentially unsecured" when the second deed of trust was recorded. Accordingly, the chancellor opined that subrogation would not prejudice Centreville because Centreville "remains in the same . . . position . . . that it has knowingly been in since it made its loan" to Lynch and Higassi. The chancellor further opined that failing to grant subrogation as requested by North American Mortgage would "unjustly enrich [Centreville] by allowing it a first lien position."

On October 27, 2000, the chancellor entered a final decree incorporating by reference the reasoning of her prior opinion letter and awarding North American Mortgage a first lien of $198,928.07 against the property. The decree further confirmed that Centreville's lien was second in priority and that the

5

balance of North American Mortgage's lien, $9,321.93, was third in priority.

Prior to the entry of the final decree, Centreville filed a motion for reconsideration. On November 17, 2000, the chancellor entered an order suspending the October 27, 2000 decree and took the motion for reconsideration under advisement. After reviewing briefs filed by the parties, the chancellor, in an order dated February 1, 2001, overruled the motion for reconsideration and reinstated the October 27, 2000 decree. We awarded Centreville this appeal.

## DISCUSSION

We begin our analysis in this case, as did the chancellor, with pertinent and well established principles previously noted in Federal Land Bank. "Subrogation is the substitution of another person in place of the creditor to whose rights he succeeds in relation to the debt. This doctrine is not dependent upon contract, nor upon privity between the parties; it is the creature of equity, and is founded upon principles of natural justice." 179 Va. at 401, 18 S.E.2d at 920. "Subrogation not being a matter of strict right, but purely equitable in its nature, dependent upon the facts and circumstances of each particular case, no general rule can be laid down which will afford a test in all cases for its application." Id. at 402, 18 S.E.2d at 920. Nevertheless, we

have expressly acknowledged that "Virginia has long been committed to a liberal application of the principle of subrogation." Id.

Although no bright-line rule for the resolution of claims for subrogation can be formulated because the merits of such claims are necessarily fact specific, several principles or guidelines are uniformly established in our cases that assist in the proper analysis of such claims. First, subrogation is not appropriate where intervening equities are prejudiced. Id. at 404, 18 S.E.2d at 921. Second, ordinary negligence of the subrogee does not bar the application of subrogation where "[a]n examination of the facts . . . shows that the equities strongly favor" the subrogee. Id. at 405, 18 S.E.2d at 921 (emphasis added).

There is no dispute in this case that the title examination conducted on behalf of North American Mortgage negligently failed to discover and disclose the properly recorded deed of trust in favor of Centreville. Because Centreville's deed of trust was properly recorded and North American Mortgage is either charged with the negligence of the title examiner hired by its agent, or, in any event, charged with constructive notice of the existence of this deed of trust in the land records, Cf. Beck v. Smith, 260 Va. 452, 457-58, 538 S.E.2d 312, 315-16 (2000), Centreville essentially contends that as between them

7

there was no inequity for the chancellor to remedy.  Rather, Centreville contends that on the facts of this case, North American Mortgage has an adequate remedy at law to recover its loss from the negligent title examiner or the appropriate title insurance company.[2]

In response, North American Mortgage essentially contends that Bankers Loan and Federal Land Bank stand for the proposition that where funds from a new loan intended to be secured by the lien of a first deed of trust on real property are used to satisfy an existing loan secured by the lien of an existing deed of trust on the same property, presumptively equitable subrogation entitles the new creditor to assume the position in line of priority of the creditor whose lien was thus extinguished.  In our view, the contentions of neither party fully reflect the analysis that underpinned the application of subrogation under the circumstances involved in those cases nor fully address the particular circumstances of the present case that bear on the proper application of the equitable doctrine of subrogation in those circumstances.

_____

[2] The record reflects that the chancellor received evidence that Stewart Title Guaranty Company insured the title for both North American Mortgage and the Bouzghaias.  However, the chancellor expressly declined to consider this evidence in her analysis of North American Mortgage's claim for subrogation.

Unlike the present case, in both Bankers Loan and Federal Land Bank, the particular facts of those cases prompted no issue of the significance of a legal separation between the obligors on the prior loans and their ownership of any equity in the property not encumbered by the liens of the security instruments that secured the payment of those loans. In the present case, however, Lynch and her husband are the obligors on Centreville's promissory note, but the Bouzghaias are the owners of the property subject to the lien of Centreville's deed of trust. The Bouzghaias are the obligors on North American Mortgage's promissory note and their property is also subject to the lien of the deed of trust in favor of North American Mortgage that secures the payment of that note. In assessing the relative equitable positions of Centreville and North American Mortgage, we are of opinion that these factual circumstances are significant.

At the time Centreville obtained its lien in the amount of $150,000, it stood in the second position of priority behind Fleet Mortgage's first lien in the amount of $199,500. The property had a value of $210,000 and, thus, Centreville was undoubtedly undersecured. Nevertheless, Centreville had the right to anticipate that the obligors would ultimately satisfy these loans to extinguish the liens upon their interests in the property. Centreville also had the right to anticipate that

9

when Fleet Mortgage's lien was extinguished Centreville's lien would advance to the position of priority of a first lien on the property. Moreover, under the events that actually occurred, Centreville was entitled to receive the balance of funds from North American Mortgage's loan to the Bouzghaias that was paid to Lynch after the promissory note held by Fleet Mortgage was satisfied from those funds. To this extent, Centreville was prejudiced.

We must also consider the fact that North American Mortgage, as against Centreville's rights and equities, is to be charged with negligently failing to discover the existence of Centreville's properly recorded second deed of trust. In this regard, we consider the factual circumstances to determine whether the equities nevertheless "strongly favor" North American Mortgage's claim for subrogation to the position of priority of the first lien holder. <u>Federal Land Bank</u>, 179 Va. at 405, 185 S.E.2d at 921. For the reasons that follow, we are of opinion that the equities asserted by North American Mortgage fall far short of strongly favoring its subrogation claim so as to excuse its negligence. Indeed, North American Mortgage's position if upheld under the circumstances of this case would essentially establish a legal right rather than an equitable one.

As we noted in Federal Land Bank, "[w]e must look to the realities of the situation as they existed at the time of the [chancellor's] decree."  179 Va. at 406, 18 S.E.2d at 922.  At that time, granting subrogation to North American Mortgage would result in the obligors on the debt secured by the lien of the first deed of trust being different from the obligors on the debt secured by the lien of Centreville's deed of trust. Moreover, the latter obligors would no longer have an equitable ownership in the property subject to Centreville's lien.  The realities are that under those circumstances Centreville would be prejudiced because there would be no incentive for Lynch and Higassi to pay their debt to Centreville in order to protect any equitable ownership in the property.  In addition, there would be little, if any, reason to anticipate that the Bouzghaias would pay the debt secured by North American Mortgage's lien on their property because the property would remain encumbered by Centreville's lien.  Under this circumstance, the primary realities are that upon the chancellor's granting of subrogation, North American Mortgage and the Bouzghaias would logically effect a "friendly foreclosure" to eliminate Centreville's lien and leave Centreville with little or no recovery under the foreclosure sale.  Equity will not condone the creation of such a circumstance, especially when that circumstance flows directly from the negligence of the party

11

seeking the benefit of it to the prejudice of an innocent party. Similarly, our commitment to a "liberal application of the principle of subrogation," Federal Land Bank, 179 at 402, 18 S.E.2d at 920, is not offended by that reasoning.

Finally, there is no merit to North American Mortgage's contention that if it is not permitted to subrogate its lien to the position of first priority of Fleet Mortgage, Centreville will receive a "windfall" by having its lien advanced to the position of first priority. North American Mortgage contends that this is so because Centreville had no expectation of being secured to the full extent of its lien, and that equity should not allow Centreville to be fully secured as a result of the satisfaction of Fleet Mortgage's lien. While it is undoubtedly true that Centreville received a significant benefit as a result of the satisfaction of Fleet Mortgage's lien from the funds provided by North American Mortgage's loan to the Bouzghaias in that Centreville's lien advanced to the position of priority of a first lien on the property, we would not characterize that benefit as a windfall that suggests unjust enrichment under the circumstances of this particular case. Moreover, any "windfall" in this case as a result of granting subrogation would inure to the benefit of the negligent title examiner and the party that insured the title for North American Mortgage and the Bouzghaias. While North American Mortgage and the Bouzghaias

12

have recourse against those parties for the loss in this case, Centreville has no such recourse.  Thus, the equities in this case favor Centreville, the innocent party who would be prejudiced if subrogation were granted.

CONCLUSION

For these reasons, we hold that the chancellor erred in awarding subrogation in favor of North American Mortgage.  We will reverse the judgment of the chancellor and enter judgment for Centreville confirming that the lien of its deed of trust is first in position of priority as against the lien held by North American Mortgage.

<u>Reversed and final judgment</u>.

13