## CIRCUIT COURT OF MADISON COUNTY

Mortgage Electronic
Registration Systems

v.

Joseph Henry Garnett,
Charles L. Garnett,
and Janice W. Garnett

December 16, 2011

Case No. CL09-002460-00

By Judge Daniel R. Bouton

The court has now had an opportunity to review in its entirety the record in this case. The written arguments submitted by counsel have also been evaluated. Finally, the court has studied the cases and authorities cited by both sides.

For the reasons set forth below, the Mortgage Electronic Registration Systems (MERS) deed of trust will be equitably subordinated to the Bank of America deed of trust that was in the original principal amount of $200,000.00. The ruling will place MERS in a first lien position that has priority over the life estate of the Garnetts. However, the relief granted by the court will be limited to the total of the MERS loan proceeds that were used to pay in full and release the $200,000.00 Bank of America deed of trust. This will be the amount set forth in the order of subrogation.

In deciding whether to grant a request for subrogation, several principles must be taken into account under Virginia law. First, no general rule can be applied; rather, the particular facts and circumstances of the case before the court must be evaluated to determine whether subrogation is appropriate. Second, when the party asking for subrogation has been negligent in failing to discover and act on available information in order to protect his interests, the equities must strongly favor that party before subrogation can be invoked. Third, subrogation is not appropriate where intervening equities are prejudiced. Finally, courts in Virginia should liberally apply the

doctrine of subrogation to meet the exigencies of each case. *Centreville Car Care v. North American Mortgage*, 263 Va. 339 (2002); *Federal Land Bank v. Joynes*, 179 Va. 394 (1942).

In the present case, there is no dispute that the plaintiff was negligent in not examining the land records that contain the information regarding the chain of title to the property. As a result, the plaintiff did not have the Garnetts execute the MERS deed of trust, thereby subordinating their life estate to the lien. Therefore, because of this negligence, the court must examine the facts of the case in order to decide whether the equities strongly favor the plaintiff. Furthermore, in assessing whether subrogation is appropriate, the court must ascertain if any intervening equities have been prejudiced.

The court will first address the equities of the parties. Here, the court finds that based on all of the relevant facts and circumstances, the equities strongly favor the claim of the plaintiff. To begin with, to refuse subrogation would confer an enormous benefit on the Garnetts. Specifically, the $200,000.00 Bank of America obligation, for which they were jointly and severally liable, was paid in full from the proceeds of the loan made by the plaintiff. Second, the deed of trust securing the payment of their personal debt has been released. Therefore, the practical effect of a denial of the request would be to allow the Garnetts to occupy and enjoy the premises for the duration of their natural lives. This would include allowing their son, the party obligated on the note secured by the existing deed of trust, to reside on the premises. As long as the Garnetts are living, the lender would have no means of enforcing the MERS lien. Moreover, the Garnetts would be under no further obligation to satisfy or contribute to a $200,000.00 loan that they had agreed to pay.

In contrast, granting subrogation would not prejudice any of the parties, and it would not confer an advantage on any of them. Rather, subrogation would place all of them in a position that is similar to that which existed under the terms of the Bank of America deed of trust. An order that limits subrogation to the amount that was disbursed to pay in full the $200,000.00 lien would provide relief that is fair and equitable to all parties. Most important, such relief would not prejudice or significantly alter the legal position of the Garnetts. Subrogation in this form would sufficiently meet the exigencies of the case.

Furthermore, in balancing the equities of the parties before the court, it should be pointed out that subrogation would arguably improve the position of the Garnetts in at least one way. Specifically, when the Bank of America deed of trust was recorded, the Garnetts not only subordinated their life estate to the lien, they also accepted personal responsibility for a debt in the principal amount of $200,000.00. As mentioned previously, this loan was paid in full from the proceeds of the MERS closing, and the deed of trust was released. Thus, without making any payment, the Garnetts were relieved of any further liability for the debt that was secured by the deed

of trust. Subrogation, however, would not return the Garnetts to a position of personal liability and would not render them responsible to MERS for the debt. They would not be subject to a separate cause of action based on any note, and they would not be liable for any deficiency in the event of a foreclosure sale. Only their life estate would be subrogated to the lien of the deed of trust. In other words, even with subrogation, the position of the Garnetts with respect to the debt has been improved because of their release from personal liability. This is a factor that can be considered by the court in deciding whether the equities here strongly favor the lender.

The court will next address whether any intervening equities have been prejudiced in this case. On this point, the relevant period of time would be the interval between the recordation of the $200,000.00 Bank of America deed of trust and the recordation of the plaintiff's deed of trust. The court finds that, during this time, nothing has occurred that would affect the equities of those involved in the litigation. This distinguishes the present case from some of those relied on by the Garnetts. In the cases that support the argument of the Garnetts, the request for subrogation was appropriately refused because of the prejudice that would be incurred by other parties.

For example, in *Centreville, supra,* subrogation was not granted because an innocent party would have been prejudiced based on what had taken place with the lien property prior to the time that the plaintiff recorded its deed of trust. Specifically, the property had been sold; thus, when subrogation was requested, the interests of two different sets of property owners and two different lienholders had to be considered. The Supreme Court of Virginia was "of opinion that these factual circumstances are significant" because they prejudiced the position of the lienholder whose interest in the property was negligently overlooked. *Id.,* at 346. In contrast, when examining the equities among the parties in the present case, no intervening person had acquired any interest in the property.

Similarly, although not decided on subrogation principles, *Overby v. White,* 245 Va. 446 (1993), is a case that presents analogous factual circumstances. There, the Supreme Court of Virginia reversed the trial judge's decision to subordinate the interests of two cotenants in property to the lien of a deed of trust that had been executed by the other cotenants. However, the cotenants whose rights were impaired had no history of mortgaging the property with the other cotenants. Rather, they obtained their interest in the disputed property when their father died intestate. After his death, the father's former wife remarried; it was only then that she and her new husband attempted to mortgage the property. The cotenants did not agree to the mortgage and never executed any of the documents. Significantly, the proceeds from the mortgage were not used to satisfy a debt for which the cotenants were liable, and the transaction did not result in the release of a deed of trust executed by them. Under these facts, the imposition of a constructive trust that would place a deed of trust ahead of their interest

in the property would have completely impaired their ownership rights. In this context, the ownership rights were acquired after the initial purchase of the property by their parents. The interest in the property that the children acquired as cotenants because of the death of their father is akin to the "intervening equities" that must be considered in cases of subrogation.

In contrast, the facts of the case before the court do not include any compromise or prejudice to the ownership rights of any of the parties. Here, it is important to stress that, once the Bank of America deed of trust was recorded, no ownership changes occurred before the MERS deed of trust was recorded. The title to the property was not modified or altered in any way. The same three persons have held the title in the same manner during and throughout all of the mortgage transactions that both sides have referred to in this case. From the time that the Bank of America deed of trust was recorded up until the plaintiff recorded its lien, nothing has intervened or occurred that would affect the equities of the parties. As a result, subrogation would not impair any rights of the Garnetts.

Finally, the court will address the argument of the Garnetts regarding the level or type of negligence committed by the plaintiff. Here, the Garnetts assert that, in deciding whether subrogation is appropriate, the court should consider a number of errors and omissions contained in the closing documents that were prepared by the plaintiff. They maintain that the mistakes and discrepancies reflected in these materials establish that the actions of the plaintiff constitute something more than ordinary negligence. The Garnetts concede that nothing about the documents affects the legal validity of the deed of trust. (Defendant Memorandum of Law, page 4.) However, they argue that, if the evidence proves gross negligence or something more than ordinary negligence, then the plaintiff is not entitled to subrogation.

The court does not find this argument persuasive. In determining whether to grant subrogation, the negligence of the plaintiff on this issue consists solely of the failure to ascertain the existence of the life estate held by the Garnetts. In the court's view, this amounts to ordinary negligence in the course of examining the title to the property. The manner in which the closing was conducted and the skill with which the closing documents were prepared would have no impact on what the plaintiff did or did not learn about the ownership of the property. Furthermore, while some evidence suggests that the closing was sloppy and disorganized, the funds that were ultimately made available from the transaction were used to pay in full the Bank of America debt that had been incurred by the Garnetts. The equities that strongly favor the plaintiff here can be traced to the satisfaction of their debt and the release of the lien against the property in which they hold a life estate.