# CIRCUIT COURT OF FAIRFAX COUNTY

Deutsche Bank,
National Trust Co.,
trustee

v.

Saqib Iqbal et al.

May 1, 2012

Case No. CL-2011-17995

BY JUDGE JANE MARUM ROUSH

This matter came on for a hearing on March 23, 2012, on the plaintiff's motion for a final order. At that time, the court asked counsel to brief the issue of whether the complaint stated a cause of action against defendant Abida S. Iqbal. The court has received counsel's brief and made it part of the record in this case. For the reasons stated below, the motion for a final order (of default) will be granted.

## Background

On December 21, 2011, the plaintiff Deutsche Bank National Trust Company, Trustee of the IndyMac INDX Mortgage Trust 2006-AR25 Mortgage Pass-Through Certificates, Series 2006-AR25 ("Deutsche Bank") commenced this declaratory judgment action against Saqib Iqbal ("Mr. Iqbal"), Abida S. Iqbal ("Mrs. Iqbal"), Citibank, N.A. ("Citibank"), Charles B. Thomas, Trustee ("Trustee Thomas"), George Kenneth Young ("Young"), Mark S. Albanese, Trustee ("Trustee Albanese"), and American Energy Restaurant, a/k/a American Energy Restaurant Equipment, L.L.C. ("American Energy").

The complaint alleges that Deutsche Bank is the current holder of a note secured by the lien of a deed of trust to real property owned by Mr. Iqbal and Mrs. Iqbal located in Springfield, Virginia (the "Property"). Deutsche Bank alleges that, through inadvertence, Mrs. Iqbal did not sign the deed of trust. Deutsche Bank seeks a declaratory judgment that its deed of trust is valid and encumbers the interest of both Iqbals in the Property.

12

The complaint alleges as follows.

1. On June 15, 2005, the Iqbals purchased the Property. Complaint ¶ 12.

2. The purchase of the Property was financed by a loan from WMC Mortgage Corporation in the amount of $610,000. ¶ 13. The Iqbals signed two promissory notes dated June 15, 2010, and two deeds of trust. The deeds of trust were properly recorded in the land records. ¶¶ 13, 14, 15. Although Mr. and Mrs. Iqbal each signed the two 2005 deeds of trust, Mr. Iqbal alone was the "Borrower" under the deeds of trust. The "Borrower" under the deeds of trust was identified as "Saqib Iqbal, a married man, as his sole and separate property." See Plaintiff's Memorandum in Support of Its Motion for a Final Order, Exhibits A and B.

3. On April 25, 2006, the purchase money loan on the Property was refinanced, in part, with a loan from Aegis Wholesale Corporation in the amount of $576,000. ¶ 16. The loan was represented by a promissory note also dated April 25, 2006. ¶ 16. The promissory note was secured by the lien of a deed of trust properly recorded in the land records. ¶ 17.

4. Mr. Iqbal signed the refinance deed of trust, but, through inadvertence, Mrs. Iqbal did not. ¶ 18. Although not alleged in the Complaint, it appears that Mrs. Iqbal did not sign the note, a loan application, a commitment letter, a closing statement, or any other loan document connected with the 2006 refinancing.

5. The proceeds of the 2006 refinancing were used to pay off the purchase money notes and deeds of trust recorded in 2005. ¶ 19. Certificates of satisfaction were recorded in the land records. ¶ 20.

6. Aegis Wholesale intended that the refinance deed of trust would encumber the interests of both Mr. Iqbal and Mrs. Iqbal in the Property.

7. Deutsche Bank is the successor in interest to Aegis Wholesale and the holder of the refinance note.

8. Citibank is the beneficiary of a credit line deed of trust on the Property recorded in February 2007. Trustee Thomas is the trustee under Citibank's deed of trust. ¶¶ 28, 29.

9. Young is the beneficiary of a deed of trust on the Property recorded in March 2007. Trustee Albanese is the trustee under Young's deed of trust. ¶¶ 30, 31.

10. Defendant American Energy is a creditor of Mr. Iqbal, with a judgment recorded in October 2006. ¶ 7.

In Count I of the complaint, Deutsche Banks asks for a declaratory judgment that the refinance deed of trust is a "valid first-position lien/interest/encumbrance against [both] Defendants [Mr. Iqbal's] and [Mrs. Iqbal's] fee interest in the Property" in the amount of $576,000, plus interest, expenses, costs, and attorney's fees. Deutsche Bank further asks for a declaration that it is equitably subrogated to the rights of the original purchase money lender under the two purchase money deeds of trust. In

addition, in Count I, Deutsche Bank asks that its deed of trust be reformed to include Mrs. Iqbal as a borrower, retroactive to May 11, 2006, the date of recordation.

In Count II of the complaint, Deutsche Bank asks a second time that the refinance deed of trust be reformed to include the signature of Mrs. Iqbal retroactive to the date of recordation.

In Count III of the complaint, Deutsche Bank asks for no specific relief, but asserts that it is equitably subordinated to the rights of WMC Mortgage Corporation under the purchase money deeds of trust. Deutsche Bank further alleges that Mr. and Mrs. Iqbal's failure to pay amounts owing under the purchase money deeds of trust to Deutsche Bank, as subrogee, constitutes a breach of their obligations and that Deutsche Bank has been damaged in the amount of $576,000 as of May 11, 2006. Deutsche Banks alleges that "no [d]efendant will be unfairly prejudiced by equitably subrogating [p]laintiff Deutsche Bank to the position of [WMC Mortgage Corporation] under the [p]urchase [m]oney [d]eeds of [t]rust." ¶ 49.

In Count IV, Deutsche Bank asks for no specific relief, but asserts that Mr. and Mrs. Iqbal have been unjustly enriched by appropriating property that, "in justice and equity, belongs to [p]laintiff Deutsche Bank." ¶ 53.

In Count V, Deutsche Bank asks that the court impose "an implied trust, including a constructive and/or resulting trust" upon both of the Iqbals' interest in the Property for the benefit of Deutsche Bank.

In addition to the relief requested in the individual counts of the complaint, Deutsche Bank asks for judgment against Mr. and Mrs. Iqbal in the amount of $576,000 as of May 11, 2006, plus interest, costs, expenses, and reasonable attorney's fees.

Mrs. Iqbal was personally served with the complaint on December 30, 2011. Mr. Iqbal was served by substituted service on that same date. The other defendants were served at various times. The Iqbals have not responded to the suit. On March 9, 2012, Judge Devine entered an order holding the Iqbals to be in default and declaring that the "allegations of the [c]omplaint are hereby taken as admitted against said [d]efendants." See Order of March 9, 2012.

Deutsche Bank nonsuited its claims against defendants Young and Trustee Albanese.

On March 23, 2013, Deutsche Bank moved the court for entry of a final order. In the proposed final order, Deutsche Bank asks the court to impose an implied trust on both Iqbals' interest in the Property for the benefit of Deutsche Bank. Additionally, under the proposed order, the court is asked to declare that the terms of the implied trust mirror the terms of the deed of trust signed by Mr. Iqbal alone, that Mrs. Iqbal is deemed to have signed the deed of trust as of the day of recordation, that the reformed deed of trust enjoys a first priority position over any other lien on the Property which is enforceable in accordance with its terms against both Mr. and Mrs. Iqbal.

Deutsche Bank has apparently abandoned its request for a money judgment against Mr. and Mrs. Iqbal as requested in the complaint. The proposed order has been signed by all remaining defendants except Mr. and Mrs. Iqbal.

At the hearing on Deutsche Bank's motion for entry of a final order, the court expressed concern about whether Deutsche Bank had stated a cause of action against Mrs. Iqbal. See *Landcraft v. Kincaid*, 220 Va. 865, 870, 263 S.E.2d 419 (1980) (failure to state a valid cause of action prevents the court from entering a valid default judgment). Did Deutsche Bank have any evidence that Mrs. Iqbal ever indicated a willingness to be bound by the terms of the refinance note and deed of trust? Had she signed any loan application, commitment letter, note, deed of trust, disclosure statement, or any of the other myriad documents typically signed at a residential loan closing? Deutsche Bank's counsel said that Mrs. Iqbal had not, but maintained that the deed of trust could be reformed to add her signature under the theory of equitable subordination. The court asked counsel to brief the issue, and a brief was submitted on March 29, 2012 (the "Brief").

The court will discuss Deutsche Bank's arguments in the order that they were presented in its Brief.

## I. *Implied Trusts*

### A. *Resulting Trust*

Deutsche Bank first argues that it is entitled to the benefit of a resulting trust because its predecessor, Aegis, advanced money with the specific intent of receiving a security interest in the Property, "[b]ut, due only to a technical defect in the Refinance Deed of Trust, Aegis did not receive the benefit of its investment." Brief at 3. According to Deutsche Bank, the fact that Mrs. Iqbal did not intend to be bound is of no matter: "the intent of the party who advances the money determines when a resulting trust should be applied." *Id.*

In the case of *1924 Leonard Road, L.L.C. v. Van Roekel*, 272 Va. 543, 636 S.E.2d 378 (2006), the Supreme Court of Virginia enunciated the elements of a resulting trust:

> A resulting trust is an indirect trust that arises from the parties'
> intent or from the nature of the transaction and does not
> require an express declaration of trust. For a resulting trust
> to arise, the alleged beneficiary must pay for the property, or
> assume payment of all or part of the purchase money before
> or at the time of purchase, and have legal title conveyed to
> another without any mention of a trust in the conveyance. The
> alleged beneficiary also must have paid the purchase money
> as his own, and not as an agent or lender of the title holder.

A resulting trust can only arise from the parties' original transaction, at the time that transaction occurs, and at no other time. Finally, because a resulting trust generally contravenes the express language of a written document, a party seeking to establish such a trust must do so by clear and convincing evidence.

*1924 Leonard Road, L.L.C. v. Van Roekel*, 272 Va. 543, 552, 636 S.E.2d 378 (2006) (internal citations omitted).

Applying those principles to the facts of this case, it is apparent the Deutsche Bank cannot establish that it is entitled to the benefit of a resulting trust. Deutsche Bank did not pay all or part of the purchase money at the time of the Iqbals' purchase of the Property. Additionally, Deutsche Bank paid off the remaining balance of the purchase money deeds of trust not "as [its] own," but in its capacity as a lender to the owners, the Iqbals. See, e.g., *Shepler v. Whalen*, 119 P.3d 1084, 1089 (Colo. 2005) ("If one pays off a mortgage on land already owned by another . . . he has not paid the purchase price of the land in the sense of the resulting trust rule"), citing George G. Bogert & George T. Bogert, *Trusts & Trustees*, § 455 (2d ed. rev. 1991).

## B. *Constructive Trust*

Deutsche Bank next argues that it is entitled to the benefit of a constructive trust, because the funds of its predecessor in interest, Aegis, were used to pay off the two purchase money deeds of trust from Mr. and Mrs. Iqbal's original acquisition of the Property in 2005. According to Deutsche Bank, the intent of the parties is irrelevant. "[C]onstructive trusts arise where a defendant's retention of the property would be inequitable — without consideration of the intent of either party." Brief at 4 (emphasis in original). Deutsche Bank argues that it would be inequitable to allow the Iqbals to retain the Property free from the lien of its security interest because "Aegis paid off [Mr. and Mrs. Iqbal's] Purchase Money Deeds of Trust only because it believed that it would receive a first priority security interest in the Property."

The Supreme Court of Virginia has enunciated the following general principles as to constructive trusts:

Constructive trusts arise, *independently of the intention of the parties, by construction of law*; being fastened upon the conscience of him who has the legal estate, in order to prevent what otherwise *would be a fraud*. They occur not only where property has been acquired by fraud or improper means, but also where it has been fairly and properly acquired, but it is contrary to the principles of equity that it should be retained,

at least for the acquirer's own benefit. . . . A constructive trust may be proved by parol evidence, provided the evidence is clear and convincing. Constructive trusts are imposed by courts of equity whenever necessary to prevent a failure of justice.

*Richardson v. Richardson*, 242 Va. 242, 245, 409 S.E.2d 148 (1991) (emphasis in original, internal citations omitted). Constructive trusts may be imposed to avoid unjust enrichment. To prevail on a claim of unjust enrichment, Deutsche Bank would have to allege and prove that: (1) Deutsche Bank conferred a benefit on Mr. and Mrs. Iqbal; (2) Mr. and Mrs. Iqbal knew of the benefit and should reasonably have expected to repay Deutsche Bank; and (3) Mr. and Mrs. Iqbal accepted or retained the benefit without paying for its value. See generally *Schmidt v. Household Finance Corp.*, 276 Va. 108, 116, 661 S.E.2d 834 (2008) (elements of unjust enrichment claim).

In this case, the court is persuaded that Mr. and Mrs. Iqbal would be unjustly enriched if Deutsche Bank were prevented by the absence of Mrs. Iqbal's signature on its loan documents from foreclosing on its collateral. Mr. and Mrs. Iqbal owned the Property jointly. By signing the two 2005 deeds of trust, Mrs. Iqbal indicated her intention to subject her interest in the Property to the liens of WMC Mortgage Corporation. Those two deeds of trust were paid off with the proceeds of Deutsche Bank's 2006 refinancing loan. Under these facts, the Iqbals would be unjustly enriched if Deutsche Bank were left with only Mr. Iqbal's unsecured promise to repay $576,000.

Therefore, the court agrees that Deutsche Bank is entitled to have a constructive trust imposed on the Property.

## II. *Equitable Subrogation*

Deutsche Bank argues in the alternative that it is equitably subrogated to the position of WMC Mortgage Corporation, the purchase money lender under the two 2005 deeds of trust that were paid off with the proceeds of the refinancing loan from Deutsche Bank's predecessor in interest, Aegis. According to Deutsche Bank, equitable subrogation arises by operation of law when one person pays the debt owed by another. Brief at 5. Deutsche. Bank argues that, because Mr. and Mrs. Iqbal were jointly obligated to pay off the indebtedness owing under the purchase money deeds of trust, its predecessor in interest Aegis "stepped into the shoes" of the purchase money lender when it paid off that indebtedness in the 2006 refinancing. Brief at 6.

In the case of *Centreville Car Care v. North American Mortgage*, 263 Va. 339, 559 S.E.2d 870 (2002), the Supreme Court of Virginia summarized the law of equitable subrogation as follows:

> Subrogation is the substitution of another person in place of the creditor to whose rights he succeeds in relation to the debt. This doctrine is not dependent upon contract, nor upon privity between the parties; it is the creature of equity, and is founded upon principles of natural justice. Subrogation not being a matter of strict right, but purely equitable in its nature, dependent upon the facts and circumstances of each particular case, no general rule can be laid down which will afford a test in all cases for its application. Nevertheless, we have expressly acknowledged that "Virginia has long been committed to a liberal application of the principle of subrogation."
>
> Although no bright-line rule for the resolution of claims for subrogation can be formulated because the merits of such claims are necessarily fact specific, several principles or guidelines are uniformly established in our cases that assist in the proper analysis of such claims. First, subrogation is not appropriate where intervening equities are prejudiced. Second, ordinary negligence of the subrogee does not bar the application of subrogation where "[a]n examination of the facts . . . shows that the equities *strongly favor*" the subrogee.

*Id.* at 345 (emphasis in original, internal citation omitted).

Applying those principles to the facts of this case, the court is persuaded that Deutsche Bank is entitled to the remedy of equitable subrogation. Significantly, there are no intervening equities that are prejudiced by the equitable subrogation of Deutsche Bank to the lien position enjoyed by WMC Mortgage Corporation. There is no question that Deutsche Bank's predecessor in interest was negligent in not determining that the Property was owned by both Iqbals as tenants by the entireties and in not requiring Mrs. Iqbal's signature to the loan documents. Nevertheless, the equities strongly favor Deutsche Bank. If Deutsche Bank were not granted the lien position enjoyed by WMC Mortgage Corporation, the Iqbals would be unjustly enriched. They would still own the Property as tenants by the entireties," but the Property would be free and clear of any mortgage obligation to Deutsche Bank, which advanced $576,000 to pay off the indebtedness secured by the two deed of trust in favor of WMC Mortgage Corporation. See, e.g, *Wachovia Mortgage v. Dallas*, 2011 Wis. App. 54, 332 Wis. 2d 426, 797 N.W.2d 930 (Wis. App. 2011) (refinance lender entitled to equitable subrogation when loan signed only by one co-owner of property paid off joint obligation of both co-owners). See also *Mortgage Electronic Registration Systems v. Garnett*, 84 Va. Cir. 72 (2011) (refinance lender entitled to equitable subrogation where it negligently failed to obtain

subordination of life tenants' estate to lien of deed of trust, but life tenants had subordinated to original deed of trust paid off by refinancing).

## Conclusion

For the foregoing reasons, the court will enter a final order in favor of Deutsche Bank.

## Final Order

This matter came before the Court on the motion of the Plaintiff, Deutsche Bank, National Trust Company, Trustee of the IndyMac INDX Mortgage Trust 2006-AR25, Mortgage Pass-Through Certificates, Series 2006-AR25, ("Deutsche Bank") for entry of this Final Order; and it appearing to the Court that Defendants Citibank, N.A. ("Citibank"), Charles B. Thomas, Trustee ("Thomas"), and American Energy Restaurant, a/k/a American Energy Restaurant Equipment, Inc. ("AER"), consent to the entry of this Final Order, as evidenced by the signatures by counsel for the parties; and it further appearing to the Court that Defendants Saqib Iqbal ("Saqib") and Abida S. Iqbal ("Abida") are in default pursuant to an Order of Default entered by this Court on March 9, 2012; and it further appearing to the Court as follows:

A. Defendants Saqib and Abida, husband and wife, are the title owners, as tenants by the entirety, of certain real property located at 7306 Calamo Street, Springfield, Virginia 22150 (the "Property") pursuant to a general warranty deed dated June 15, 2005, and recorded on June 23, 2005, in Deed Book 17429, at page 232, in the land records of Fairfax County, Virginia;

B. On April 26, 2006, Defendants Saqib and Abida refinanced the Property with a refinance loan ("Loan") from Aegis Wholesale Corporation;

C. Proceeds of the Loan were used to pay off and release a purchase money deed of trust endorsed by Defendants Sabiq and Abida, which was recorded on June 23, 3005, in Deed Book 17429, at page 235, in the land records of Fairfax County, Virginia;

D. The Loan was intended to be secured in first-position priority by a certain deed of trust in the principal amount of $576,000.00, which was dated April 25, 2006, and recorded on May 11, 2006, in Deed Book 18445, at page 328, in the land records of Fairfax County, Virginia (the "Deed of Trust");

E. The Deed of Trust was signed by Defendant Saqib; but, due only to negligence, Defendant Abida did not sign the Deed of Trust;

F. The failure to sign the Deed of Trust was a mistake and in contravention to the intentions of Aegis Wholesale Corporation.

G. Plaintiff is the successor-in-interest to Aegis Wholesale Corporation and the secured party under the Deed of Trust.

And it is hereby ordered and adjudged as follows for the reasons stated in the court's opinion letter dated May 1, 2012 (incorporated herein):

1. An implied constructive trust (the "Implied Trust") shall be, and hereby is, imposed upon the fee simple interests in the Property held by Defendants Sabiq Iqbal and Abida S. Iqbal;

2. Under the Implied Trust, Defendants Sabiq Iqbal and Abida Iqbal hereby hold legal title to the Property in trust for the benefit of Plaintiff, subject to the terms of this Final Order;

3. The Implied Trust shall be, and hereby is, a first-position lien and security interest encumbering the Property, retroactively imposed and deemed recorded on May 11, 2006, and subject to the same terms and conditions stated in the Deed of Trust recorded on May 11, 2006, in Deed Book 18445, at page 328, which terms and conditions are incorporated in this Final Order by reference;

4. Accordingly, (i) the Implied Trust hereby consists of the Deed of Trust; (ii) the Deed of Trust is deemed signed by Defendants Sabiq Iqbal and Abida S. Iqbal and recorded *nunc pro tunc* May 11, 2006; (iii) the Deed of Trust constitutes a valid and enforceable first-position lien and security interest encumbering the fee simple interests of Defendants Sabiq Iqbal and Abida S. Iqbal; and (iv) the Deed of Trust may be enforced pursuant to its terms as a valid and enforceable first-priority lien, security interest, and mortgage encumbering the fee simple interest in the Property held by Defendants Sabiq Iqbal and Abida S. Iqbal.

5. The Clerk of the Court is shall spread this Final Order in and among the land records of Fairfax County, Virginia, and index the Order under the names (i) Deutsche Bank, National Trust Company, (ii) Saqib Iqbal, (iii) Abida S. Iqbal, (iv) Citibank, N.A., Charles B. Thomas, Trustee, and (v) American Energy Restaurant.

This matter is ended.