SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| SOURCECORP, INCORPORATED, | ) Arizona Supreme Court |
| | ) No. CV-11-0269-PR |
| Plaintiff/Appellee, | ) |
| | ) Court of Appeals |
| v. | ) Division One |
| | ) No. 1 CA-CV 10-0212 |
| DEAN D. NORCUTT and STACEY L. | ) |
| NORCUTT, husband and wife, | ) Maricopa County |
| | ) Superior Court |
| Intervenors/Appellants. | ) No. CV2002-020676 |
| | ) |
| | ) |
| | ) **O P I N I O N** |
| _____ | ) |

Appeal from the Superior Court in Maricopa County
The Honorable J. Kenneth Mangum, Judge

**REVERSED AND REMANDED**
_____

Opinion of the Court of Appeals, Division One
227 Ariz. 463, 258 P.3d 281 (App. 2011)

**AFFIRMED**
_____

STEPTOE & JOHNSON LLP                                        Phoenix
     By   Francis J. Burke, Jr.
          Bennett Evan Cooper
          Douglas D. Janicik
Attorneys for Sourcecorp, Incorporated

MARISCAL, WEEKS, MCINTYRE & FRIEDLANDER, P.A.               Phoenix
     By   Michael R. Scheurich
          Anne L. Tiffen
          Robert C. Brown
And

GUST ROSENFELD, P.L.C.                                       Phoenix
     By   Charles W. Wirken
          Scott A. Malm
Attorneys for Dean D. Norcutt and Stacey L. Norcutt

HOLDEN WILLITS PLC                                           Phoenix
     By   Michael J. Holden
          Barry A. Willits
Attorneys for Amicus Curiae Arizona Builders' Alliance

GUST ROSENFELD, P.L.C.                                       Phoenix
     By   Richard A. Segal
          Charles W. Wirken
          Scott A. Malm
Attorneys for Amicus Curiae Land Title Association of Arizona
_____

**B A L E S**, Justice

¶1      Dean and Stacey Norcutt bought a home for cash and satisfied the existing first mortgage.  They later discovered the home was also subject to a judgment lien far exceeding the property's value.  We hold that the purchasers were equitably subrogated to the mortgage lien's priority for the amount they paid to satisfy the mortgage.

## I.

¶2      In September 2004, Sourcecorp, Incorporated obtained a judgment exceeding $3 million against Steven and Rita Shill, who owned residential property in Prescott.  The property was subject to a first mortgage in favor of Zions National Bank securing a debt of nearly $689,000.[1]  Sourcecorp recorded a judgment lien.  In November 2004, the Shills sold the property

---

[1] Zions Bank held a deed of trust, but we refer to this interest as a "mortgage" because Sourcecorp and the opinion of the court of appeals use this term.  The distinction between a mortgage and a deed of trust is immaterial to our analysis.  *Cf.* Restatement (Third) of Property: Mortgages § 1.1 (1997) (defining "mortgage" to include deeds of trust).

2

to the Norcutts for $667,500 in cash. Zions Bank accepted $621,000 of the proceeds in full satisfaction of the debt secured by its first mortgage. Although the Norcutts purchased title insurance from First American Title Insurance Company, the title insurer did not discover Sourcecorp's judgment lien.

¶3    After the Norcutts bought the property, Sourcecorp initiated a sheriff's sale to foreclose on its judgment lien. The Norcutts sued to enjoin the sale. Granting relief, the trial court ruled that the Norcutts' interest in the property was superior to Sourcecorp's judgment lien. The court of appeals reversed for reasons not before this Court. *Sourcecorp, Inc. v. Shill*, No. 1 CA-CV 05-0425 (Ariz. App. Sept. 26, 2006) (mem. decision). On remand, the Norcutts argued that they were equitably subrogated to the position of Zions Bank in priority over Sourcecorp. The trial court rejected this argument and entered summary judgment for Sourcecorp. Reversing again, the court of appeals held that the Norcutts were equitably subrogated. *Sourcecorp, Inc. v. Norcutt*, 227 Ariz. 463, 471 ¶ 37, 258 P.3d 281, 289 (App. 2011).

¶4    We granted review because application of the equitable subrogation doctrine in this context is an issue of first impression and statewide importance. Jurisdiction exists under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24 (2009).

3

¶5    Equitable subrogation is "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Mosher v. Conway*, 45 Ariz. 463, 468, 46 P.2d 110, 112 (1935).  This equitable remedy is "designed to avoid a person's receiving an unearned windfall at the expense of another."  Restatement (Third) of Property: Mortgages § 7.6 cmt. a (1997) ("Restatement"); *see Mosher*, 45 Ariz. at 468, 46 P.3d at 112 (noting that purpose of doctrine is to prevent injustice).  "The general rule is that a person having an interest in property who pays off an encumbrance in order to protect his interest is subrogated to the rights and limitations of the person paid."  *Id.* at 472, 46 P.2d at 114; *see also* Restatement § 7.6(a) (providing that "[o]ne who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment").

¶6    *Mosher* concerned "paving liens" on residential lots assessed for street improvements.  Under the statutory scheme, the city could auction liens for delinquent assessments to private parties.  If the property owner or a "party in interest" did not redeem the lien within a year, the purchaser would

obtain the property free of encumbrances. 45 Ariz. at 465-67, 46 P.2d at 111-12. In *Mosher*, one lot was subject to three liens, which were sold separately. Applying equitable subrogation, this Court held that the second purchaser was subrogated to the positions of the first and third purchasers when he redeemed their liens, even though the property owner ultimately redeemed all of the liens. The owner could not complain about this result because it merely required her to pay one person rather than another to release the liens. *Id.* at 471, 46 P.2d at 113.

¶7      *Mosher* said that "no general rule can be stated which will afford a test [for equitable subrogation] in all cases." *Id.* at 468, 46 P.2d at 112. Instead, "[w]hether it is applicable or not depends upon the particular facts and circumstances of each case as it arises." *Id.*, 46 P.2d at 112. Noting "the modern tendency" to extend the doctrine's use, *id.*, 46 P.2d at 112, the Court also observed that

> [A] mere volunteer, who has no rights to protect, may not claim the right of subrogation, for one who, having no interest to protect, without any legal or moral obligation to pay, and without an agreement for subrogation or an assignment of the debt, pays the debt of another, is not entitled to subrogation, the payment in his case absolutely extinguishing the debt.

*Id.* at 470, 46 P.2d at 113. The Court immediately added that "when one, to protect his own interest, pays a debt which he

honestly believes must be paid to accomplish that purpose, . . . he cannot be held to be a mere volunteer." *Id.*, 46 P.2d at 113.

¶8     Because the Court declined to adopt a bright-line test in *Mosher* and has not revisited the issue, the court of appeals has developed guidelines for applying equitable subrogation. In 1965, the court of appeals stated that subrogation would occur if (1) a third person discharges an encumbrance on the property of another; (2) the person is not a volunteer; and (3) there is an express or implied agreement "that he will be substituted in place of the holder of the encumbrance." *Peterman-Donnelly Eng'rs & Contractors Corp. v. First Nat'l Bank of Ariz.*, 2 Ariz. App. 321, 325, 408 P.2d 841, 845 (1965).

¶9     Nearly forty years later, the court of appeals described several tests for equitable subrogation. *See Lamb Excavation, Inc. v. Chase Manhattan Mortg. Corp.*, 208 Ariz. 478, 480-82 ¶¶ 8-14, 95 P.3d 542, 544-46 (App. 2004). Reviewing cases from different jurisdictions, the court said the "majority approach" requires four primary elements: (1) the party claiming equitable subrogation has paid the debt; (2) the party was not a volunteer; (3) the party was not primarily liable for the debt; and (4) no injustice will be done to the other party by allowing subrogation. *Id.* at 480 ¶ 8, 95 P.3d at 544.

¶10     *Lamb Excavation* explained, however, that the Restatement has adopted a more expansive standard. *Id.* at 481

6

¶ 10, 95 P.3d at 545; Restatement § 7.6. Under this test, a person who "fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment." Restatement § 7.6. Such equitable relief may be appropriate, for example, if the person seeking subrogation "expected to receive a security interest in the real estate with the priority of the mortgage being discharged." *Id.*

¶11 In *Lamb Excavation*, the court of appeals distinguished *Peterman-Donnelly* from the "majority approach," 208 Ariz. at 480-81 ¶¶ 7-8, 95 P.3d at 543-44, and observed that Arizona's approach "appears consistent with the Restatement." *Id*. at 482 ¶ 13, 95 P.3d at 546. In the instant case, the court of appeals cited the "primary elements" of the "majority approach," noted other factors considered in Arizona cases, and quoted *Lamb Excavation*'s comment about the Restatement. 227 Ariz. at 466-67, 469 ¶¶ 14, 25, 258 P.3d at 284-285, 287.

¶12 There is thus some ambiguity in Arizona case law regarding the test for equitable subrogation. For reasons explained below, we adopt the Restatement approach because it is most consistent with the rationale for equitable subrogation.

### III.

¶13 Absent equitable subrogation, once the debt to Zions Bank was fully satisfied by the Norcutts, Sourcecorp's judgment

7

lien advanced in priority. Sourcecorp claims that it is entitled to execute on its $3 million judgment lien through a sheriff's sale. The Norcutts would receive nothing from such a sale, but would likely have a claim against their title insurer for failing to discover Sourcecorp's lien. In contrast, the Norcutts argue that they are subrogated to the position of Zions Bank and therefore have a priority over Sourcecorp's judgment lien.

¶14　　　Relying on *Mosher* and other cases, Sourcecorp argues that equitable subrogation is not appropriate because the Norcutts acted as mere volunteers in purchasing the property. Alternatively, Sourcecorp contends that subrogation is not available because there was no agreement, express or implied, that the Norcutts would be subrogated. Finally, Sourcecorp contends that equitable considerations preclude subrogation. We consider these arguments in turn.

**A.**

¶15　　　*Mosher* and later cases state that a "mere volunteer" cannot claim equitable subrogation. But *Mosher* also explained that a person who pays a debt to protect the person's interests is not a volunteer. 45 Ariz. at 470, 46 P.2d at 113. *Mosher* is thus consistent with the Restatement, which does not use the term "volunteer" as a talisman, but instead recognizes that a

8

person who has paid a debt to protect his or her own interests may seek equitable subrogation. *See* Restatement § 7.6.

¶16     We agree with the Restatement that equitable subrogation should not turn on whether the person invoking the doctrine is labeled a volunteer. "[T]he meaning of the term 'volunteer' is highly variable and uncertain, and has engendered considerable confusion." Restatement § 7.6 cmt. b. Instead, the Restatement appropriately focuses on other circumstances of the party seeking to invoke subrogation, including whether the party has paid a preexisting obligation to protect the party's interest in the property. *See* Restatement § 7.6; *see also Dietrich Indus., Inc. v. United States*, 988 F.2d 568 (5th Cir. 1993) (permitting equitable subrogation without discussing whether purchaser was a volunteer); Grant S. Nelson & Dale A. Whitman, 2 *Real Estate Finance Law* § 10.7 (5th ed. 2010) ("[T]he issue is only whether the payor expected that the payment would free the property; if this was the grantee's understanding, subrogation should be available.").

¶17     The Norcutts paid the preexisting debt to Zions Bank to protect their concurrently acquired interest in the property. The Norcutts thus had a sufficient interest to allow them to seek equitable subrogation. *Cf. Han v. United States*, 944 F.2d 526, 530 (9th Cir. 1991) (purchasers paid off mortgagee's interest "to establish and protect their own interest" and

therefore were not volunteers); *E. Boston Sav. Bank v. Ogan*, 701 N.E.2d 331, 336 (Mass. 1998) (same).

**B.**

¶18 Quoting *Herberman v. Bergstrom*, Sourcecorp also argues that "[f]or equitable subrogation to apply, there must be an agreement . . . that the subsequent lender will be substituted for the holder of the prior encumbrance." 168 Ariz. 587, 590, 816 P.2d 244, 247 (App. 1991). Other decisions of the court of appeals contain similar language. *See Lamb Excavation*, 208 Ariz. at 482 ¶ 13, 95 P.3d at 546 (requiring an "express or implied agreement" to subrogate); *Peterman-Donnelly*, 2 Ariz. App. at 325-26, 408 P.2d at 845-46 (same).

¶19 *Mosher*, however, did not require an "agreement" in holding that the purchaser of paving liens was equitably subrogated to the positions of other lienholders. *See* 45 Ariz. at 471, 46 P.2d at 113. Moreover, to the extent that the court of appeals has required an "agreement," it has adopted a very elastic notion of the concept. In *Lamb Excavation*, property owners obtained a construction loan secured by a deed of trust. After several subcontractors served preliminary notices of mechanics' liens, *see* A.R.S. § 33-992.01, the owners obtained permanent financing and satisfied the construction loan. The court of appeals concluded that the permanent lender was equitably subrogated to the prior lien position of the

10

construction lender.  *See* 208 Ariz. at 483 ¶ 16, 95 P.2d at 547. In reaching this conclusion, the court found "at least an implied agreement to subrogate" based on statements in the permanent loan documents and closing instructions that the new lender would have a first lien.  *Id.*

¶20     The Restatement and case law from other jurisdictions do not require an agreement as a condition for equitable subrogation.  *See* Restatement § 7.6 cmt. a; *Han*, 944 F.2d at 529 (listing five factors justifying the use of equitable subrogation without requiring an agreement).  The requirement of an "agreement" for subrogation – like the disqualification of "volunteers" - has been subject to varying interpretations. *Compare Citizens' Mercantile Co. v. Eason*, 123 S.E. 883, 886 (Ga. 1924) (holding that a purchaser was not entitled to equitable subrogation because he did not pay "debts under an agreement, express or implied, . . . that he would be subrogated"), *with In re Mortgages Ltd.*, 459 B.R. 739, 742 (Bankr. D. Ariz. 2011) ("Arizona case law seems to hold that the subsequent lender's intent to obtain first lien priority is sufficient evidence, standing alone, to satisfy the agreement requirement.").

¶21     We adopt the Restatement approach and reject any requirement of an "agreement" as a condition for equitable subrogation.  To be sure, parties may achieve subrogation by

agreement, such as through an assignment of a promissory note and related mortgage. *See* Restatement § 7.6 cmt. a (distinguishing "conventional subrogation" by assignment or agreement from equitable subrogation). Equitable subrogation, however, does not turn on contractual principles, but instead on the concern to prevent unjust enrichment. That goal is served by allowing subrogation when a party pays a mortgage to protect an interest in the property, irrespective of an express or implied agreement that the party will succeed to the position of the prior lienholder.

## C.

¶22     Finally, Sourcecorp argues that because the Norcutts obtained title insurance from which they could recoup any losses, equitable considerations preclude subrogation. Sourcecorp contends that neither the Norcutts nor the insurer should benefit from the insurer's negligence in failing to discover the recorded lien.

¶23     Accepting these arguments, however, would require us to ignore the key concern underlying equitable subrogation and would unjustly enrich Sourcecorp. Before the Norcutts purchased the home, Sourcecorp had a second lien on the property, which was worth less than the outstanding mortgage debt of $689,000. The Norcutts satisfied the first lien by paying Zions Bank $621,000 in cash. Sourcecorp contends that the result –

12

unintended by the Norcutts – was that Sourcecorp obtained a first lien on property that had just sold for $667,500, and the Norcutts were left with nothing but a claim against their insurer.

¶24 Denying subrogation here, therefore, would give Sourcecorp a windfall independent of whether the Norcutts were insured or had constructive notice of the judgment lien. (There is no suggestion the Norcutts had actual notice of the lien, and we need not address whether a purchaser with actual notice could ever be equitably subrogated.) Moreover, there is no general requirement that a person seeking subrogation lack notice in order to obtain equitable relief. In *Lamb Excavation*, for example, the permanent lender was subrogated to a first lien position even though various subcontractors had served twenty-day notices of mechanics' liens. 208 Ariz. at 484 ¶ 20, 95 P.3d at 548 (observing that "constructive notice is not an element of equitable subrogation under Arizona law"); *see also* Restatement § 7.6 cmt. e (noting that "the payor's notice, actual or constructive, is not necessarily relevant. The question in such cases is whether the payor reasonably expected to get security with a priority equal to the mortgage being paid."). We also agree with the court of appeals that it would be anomalous to deny equitable subrogation merely because a party had been

13

diligent in obtaining title insurance.  227 Ariz. at 471 ¶ 35, 258 P.3d at 289.

**¶25**        Sourcecorp further argues that subrogation would prejudice its interests by preventing it from moving up in priority as a lienholder after the satisfaction of the mortgage debt to Zions Bank.  "Subrogation will be recognized only if it will not materially prejudice the holders of intervening interests."  Restatement § 7.6 cmt. e.  We do not accept, however, that subrogation would materially prejudice Sourcecorp.

**¶26**        Generally, the satisfaction of a superior lien results in subordinate lienholders advancing in priority, but preventing this result in certain circumstances is precisely the aim of equitable subrogation.  As the Restatement notes:

> One who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment.  *Even though the performance would otherwise discharge the obligation and the mortgage*, *they are preserved* and the mortgage retains its priority in the hands of the subrogee.

Restatement § 7.6(a) (emphasis added).  Thus, preventing a junior lienholder from advancing in priority is an intended consequence of equitable subrogation.  *See Lamb Excavation*, 208 Ariz. at 483 ¶ 18, 95 P.3d at 547 ("We fail to comprehend the nature of the perceived prejudice or inequity, as it appears the lienholders would remain in the *same* position they occupied

14

before subrogation . . . ."); Restatement § 7.6 cmt. e ("The holders of . . . intervening interests can hardly complain [about subrogation]; their position is not materially prejudiced, but is simply unchanged."). Indeed, insofar as the Norcutts are subrogated only for the amount they paid to discharge the first mortgage, *see infra* ¶ 29, Sourcecorp is somewhat better off, because this amount was less than the outstanding debt to Zions Bank of $689,000.

¶27 Sourcecorp also argues that if the Norcutts are placed in the position of Zions Bank, they could eliminate Sourcecorp's judgment lien by a collusive refinancing followed by a foreclosure by the new first mortgage holder. *Cf. Centreville Car Care, Inc. v. N. Am. Mortg. Co.*, 559 S.E.2d 870, 874 (Va. 2002) (noting concern about "friendly foreclosure" if purchaser were subrogated to position of first mortgage). This concern, however, is addressed by the limits to the equitable remedy. As a result of paying the obligation owed to Zions Bank, the Norcutts only "become[] by subrogation the owner of the obligation and the mortgage *to the extent necessary* to prevent unjust enrichment." Restatement § 7.6(a) (emphasis added).

¶28 In determining the extent to which the Norcutts are subrogated to the prior position of Zions Bank, we note that they are cash purchasers rather than creditors looking to the property to secure a debt. With respect to creditors,

15

"[o]rdinarily one who is entitled to subrogation is permitted to enforce both the mortgage and the secured obligation." Restatement § 7.6 cmt. a. Fee owners are in a different situation, because the merger doctrine generally holds that if they acquire a mortgage on their own property, the lien is extinguished because the lesser interest "merges" into the greater. *See Mid Kansas Fed. Sav. & Loan Ass'n v. Dynamic Dev. Corp.*, 167 Ariz. 122, 129, 804 P.2d 1310, 1317 (1991) (noting that equitable considerations may preclude merger).

¶29    Recognizing that equitable subrogation depends on the facts of the particular case, *see Mosher*, 45 Ariz. at 468, 46 P.2d at 112, we conclude that it is not appropriate to confer on the Norcutts a right to "foreclose" on the interest to which they are subrogated. Instead, the purposes of equitable subrogation are fully served by deeming the Norcutts to have a priority to proceeds from any sale of the property in the amount they paid to satisfy the debt, $621,000. *Cf. Lamb Excavation*, 208 Ariz. at 483 ¶ 19, 95 P.3d at 547 (noting that payor is subrogated only to the extent funds are applied toward payment of prior lien). Applying equitable subrogation in this manner does not eliminate Sourcecorp's judgment lien. To the extent that lien adversely affects the Norcutts' equity or renders the property less marketable, we neither address nor foreclose any claims the Norcutts might have against their title insurer.

16

**IV.**

¶30     For the reasons stated, we affirm the opinion of the court of appeals and remand to the superior court for entry of summary judgment in favor of the Norcutts consistent with this opinion.  We deny the requests for attorneys' fees.

_____
W. Scott Bales, Justice

CONCURRING:

_____
Rebecca White Berch, Chief Justice

_____
Andrew D. Hurwitz, Vice Chief Justice

_____
A. John Pelander, Justice

_____
Robert M. Brutinel, Justice