

2015 SEP 14 AM 9: 10

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BEL AIR & BRINEY, a general Partnership, NICK BRINEY, a single man, ROGER C. BEL AIR AND CANDACE BEL AIR, | ) ) ) ) ) | No. 71544-5-I |
| Appellants, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| CITY OF KENT, | ) | PUBLISHED OPINION |
| Respondent. | ) ) ) | FILED: September 14, 2015 |

SPEARMAN, C.J. — When the City of Kent (City) bought the property that is the subject of this action, it paid off the first position lien but did not discover the junior lien until after the proceeds had been disbursed. The City filed a complaint for declaratory relief, seeking equitable subrogation to the prior first position lienholder and the right to foreclose on the resulting equitable lien. On the City's motion for summary judgment, the trial court granted the requested relief. The junior lienholders appeal, claiming the trial court erred in so ruling because they will be materially prejudiced by subrogating the City to the first position lien and the City was not entitled to foreclose on the lien. We affirm in part and reverse in part, finding that while the City is entitled to equitable subrogation, it may not foreclose on its equitable lien.

## FACTS

Appellant Bel Air & Briney (B&B) is a general partnership between Roger B. Bel Air and Nick Briney.[1] In June 2007, B&B loaned Hiep Nguyen, Hoang Tran, and Dun Tram (Borrowers) $134,000 in return for a promissory note with an interest rate of 12 percent (Note). This interest rate would rise to 24 percent on default. The Note required interest-only payments of $1,345 until its maturity on December 13, 2007, at which time the total unpaid balance would be due. On December 7, 2007, the Note's maturity date was extended to June 13, 2008, and the principal amount increased by $9,500. The Borrowers' monthly payments increased to $1,435, reflecting the additional interest for increased principal. The Note was extended again on June 27, 2008, resulting in an additional $10,000 in principal, monthly payments of $1,535, and a maturity date of December 13, 2008.

The Note was secured by a deed of trust (B&B deed of trust) that encumbered four parcels of land, listed as Parcels A, B, C, and D. The B&B deed of trust was recorded on June 15, 2007, and was in either second or third position on each parcel. The senior liens on parcels A and D were foreclosed in 2009, extinguishing B&B's junior interests. Parcel B was sold at a short sale in 2012, and B&B received $3,500 in exchange for release of its interest in Parcel B.

---

[1] Although Nick Briney and Roger and Candace Bel Air are also named as parties, the activity giving rise to this appeal was primarily that of the general partnership, Bel Air and Briney. For that reason we refer to the entity of the general partnership rather than the individuals during the course of this opinion. No disrespect is intended.

The City wanted to develop an aquatic center on the block of Parcel C (Property). The City and the Borrowers entered into negotiations to purchase the Property in 2006. The City received a preliminary title commitment from Pacific Northwest Title Company (PNWT) on March 14, 2007, three months before B&B recorded its deed of trust. PNWT issued a title policy to the City on January 31, 2008, based on the preliminary title commitment. The B&B deed of trust was not included in the title report or the policy. The sale closed in January 2008 and the City paid $392,500 cash for the Property. MortgageIt, the first position lender, received $196,894.17 from proceeds and reconveyed its deed of trust. The Borrowers received $193,499.50 from the sale and ceased making regular payments on the B&B deed of trust. The last payment B&B received was $1,850, which included a late-payment fee, in October of 2008. As of January 31, 2008, the total outstanding amount on the Note was $143,305.42.

The Borrowers did not inform the City about the B&B deed of trust. As a result, the City did not learn about the deed of trust until it was contacted by Briney in July 2012. Briney learned about the sale of the Property in July 2012, while in negotiations to reconvey B&B's interest in Parcel B. Until then, B&B was unaware that the MortgageIt deed of trust had been reconveyed.

The City gave notice of B&B's claim to its title insurer, First American Title Insurance Company (First American), successor to PNWT. First American accepted tender of defense. On May 1, 2013, the City filed a complaint for declaratory relief, seeking a judgment of equitable subrogation declaring that B&B's interest is junior to the City's interest in the amount of $196,894.17. The City later amended its complaint to add a second claim for foreclosure of the

3

resulting equitable lien to extinguish all junior interests in the property. As of October 2012, the Property's fair market value was approximately $110,000.

The parties filed cross motions for summary judgment on October 18, 2013. The trial court granted the City's motion on January 21, 2014 and denied B&B's cross motion. The trial court entered judgment in favor of the City, declaring B&B's deed of trust to be second to the City's lien, and ordering foreclosure of the City's lien. At the sale, the City would be permitted to credit bid up to $196,894.17, and would receive any proceeds from the sale after deducting costs. B&B filed a motion for reconsideration, which the court denied on April 9, 2014.

B&B filed a second motion for reconsideration on April 21, 2014, contending that the trial court had no basis for ordering foreclosure of the lien. The trial court granted B&B's second motion and struck the right to foreclose on the equitable lien. B&B immediately served a notice of default, instituting foreclosure of its junior lien. The City then filed a motion for reconsideration on the issue of foreclosure. B&B filed this appeal before the trial court had ruled on the City's motion. On July 30, 2014, the trial court granted the motion and entered an order permitting the City to foreclose on its lien. B&B assigns additional error to that order.

## DISCUSSION

We review a trial court's order granting summary judgment de novo. Columbia Cmty. Bank v. Newman Park, LLC, 177 Wn.2d 566, 573, 304 P.3d 472 (2013). On review, we view all evidence in the light most favorable to the nonmoving party. Id. Summary judgment is appropriate if there is "no genuine

4

issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." CR 56(c).

## Equitable Subrogation

Subrogation is "'an equitable remedy,'" and is "'founded in the facts and circumstances of each particular case.'" Newman Park, 177 Wn.2d at 581 (quoting, RESTATEMENT (THIRD) OF PROPERTY MORTAGES § 7.6 CMT. A); Credit Bureau Corp. v. Beckstead, 63 Wn.2d 183, 186, 385 P.2d 864 (1963)). The doctrine allows an outside party to step into the lender's shoes and receive the benefit of the outstanding debt, without an agreement or assignment of rights among the outside party, the lender, or the debtor. Id. at 573. In other words, if a third party pays the debtor's outstanding loan to the lender without any formal agreement among the parties, then equity may permit the third party to take over the lender's interest and receive the debtor's payments. Id. at 574. The rationale for subrogation is to prevent the unearned windfall that would otherwise accrue to the debtor, who could deny the obligation to make further payments on the debt because it has been satisfied by another to whom the debtor owed no obligation by reason of assignment of rights or other agreement. Id.

In the context of mortgage refinancing, equitable subrogation takes a somewhat different form. There, it is considered "'a tool by which real property lenders, or lienors, may replace the prior, senior lien position of an earlier in time lender by paying off that prior lender's loan.'" Id. (quoting Scott B. Mueller, *Is Equitable Subrogation Dead for Lenders and Insurers in Missouri?*, 66 J. Mo. B. 196, 196 (2010)). Thus, in the refinancing context it is generally not the debtor

who would be unjustly enriched by the payment of his or her debt by a third party,

rather it is the junior lienholder. This is so because, absent subrogation:

> [T]he third party's payment would bump the number two security interest into the number one position without the junior lienholder having taken any action to warrant such an advancement. We prevent this unjust enrichment by subrogating the party paying off the priority interest to the party who held that interest, to the extent of the former lienholder's interest at that time.

Id. at 575 (citation omitted). Stated differently, in this context, "equitable

subrogation simply seeks to maintain the proper order of priorities." Bank of

America, N.A. v. Prestance Corp., 160 Wn.2d 560, 564, 160 P.3d 17 (2007)

(citing Burgoon v. Lavezzo, 68 Wn. App., D.C. 20, 92 F.2d 726, 729 (1937)).

Washington has explicitly adopted the "liberal approach" to equitable

subrogation as expressed in the Restatement (Third) § 7.6. See Newman Park,

177 Wn.2d at 580 ("We now explicitly adopt Restatement (Third) § 7.6 in full.)

That section reads as follows:

> (a) One who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee.
> (b) By way of illustration, subrogation is appropriate to prevent unjust enrichment if the person seeking subrogation performs the obligation:
> (1) in order to protect his or her interest;
> (2) under a legal duty to do so;
> (3) on account of misrepresentation, mistake, duress, undue influence, deceit, or other similar imposition; or
> (4) upon a request from the obligor or the obligor's successor to do so, if the person performing was promised repayment and reasonably expected to receive a security interest in the real estate with the priority of the mortgage being discharged, and if subrogation will not materially prejudice the holders of intervening interests in the real estate.

Under the liberal approach of § 7.6, "[e]quitable subrogation should never be allowed if a junior interest is materially prejudiced, but if the junior interests are unaffected, then there is no reason to deny it." Prestance, at 572. See also Newman Park, 177 Wn.2d at 582. ("If the circumstances are such that subrogation to a prior mortgage will relieve the payor, and *if no prejudice to any innocent person will result,* the payor may have subrogation." (Quoting RESTATEMENT (THIRD) § 7.6, cmt d.))

B&B argues that equitable subrogation is not applicable to this case because it would be materially prejudiced thereby and because its absence would not cause B&B to be unjustly enriched.[2] B&B points out that the Borrowers, who ceased making payments shortly after the sale, pocketed the amount in excess of that necessary to pay off the senior loan. Thus, it received nothing from the proceeds of the sale even though the amount was more than sufficient to pay off its lien. B&B also points out that in the interim, the property's value has decreased to such an extent that it is worth less than the amount owed on its lien. As a result, according to B&B, if equitable subrogation is applied, it will be materially prejudiced because it will lose any opportunity to recoup any of its losses. And, in the absence of its application, even if B&B's priority is advanced,

---

[2] B&B also argue that equitable subrogation is not properly applied where the senior lien is paid off as part of a sale and not a refinance. In the latter circumstance, B&B contends the lender fully expects to be substituted in the prior lender's position, but a purchaser who buys the property outright has no such expectation. We reject the argument for three reasons. First, other than the fact that Prestance and Newman Park arose in the context of a refinancing, B&B cite no case authority in support of this argument. Second, under the liberal approach to equitable subrogation adopted in Newman Park, we find no meaningful distinction between the two circumstances. And, third, Illustration 21 to Restatement § 7.6, cmt. d, contemplates just such a situation as here, where equitable subrogation is properly applied in favor of the purchaser of a property who pays off the senior lien, but which, unbeknownst to the purchaser, is also subject to a junior lien. See infra at 9.

7

it cannot be unjustly enriched, given the Borrowers' retention of the sale proceeds and subsequent default and the substantial decrease in the property's value.

In support of its position, B&B relies primarily on Centreville Car Care, Inc. v. N. Am. Mortgage Co., 263 Va. 339, 559 S.E.2d 870 (2002). But the case is unavailing because it is distinguishable both on its facts and because Virginia, unlike Washington, has not adopted § 7.6 of the Restatement.

In Centreville, the plaintiff, Centreville Car Care (Centreville) held a second deed of trust on a property that was overlooked when the property was purchased. 559 S.E. 2d at 871. The purchasers paid off the first deed of trust and gave the remainder of the sale proceeds to the original owners. Id. The purchasers had borrowed money from a third lender, North American Mortgage, to pay for the sale, and secured that loan with a first mortgage on the property. Id. The original owners defaulted on their loan to Centreville, and Centreville sought to foreclose. Id. North American Mortgage sought equitable subrogation, claiming that its deed of trust should be senior to the Centreville mortgage. Id. The Virginia court disagreed, concluding that equitable subrogation was inapplicable because Centreville was not unjustly enriched since it had the right to anticipate that its secured interest would be improved and/or paid based on the satisfaction of the first deed of trust, and that subrogation, if imposed would materially prejudice Centreville because it would get virtually nothing in return on its lien. Id. at 874.

Although no Washington cases have addressed this precise factual scenario, the result in Centreville appears to be directly at odds with § 7.6 of the

Restatement. The Centreville court found that subrogation would prejudice Centreville because satisfaction of the senior lien did not result in payment of its lien and that the improvement in the position of its lien was warranted. But the comment to RESTATEMENT (THIRD) § 7.6(d) contemplates just such a situation and concludes otherwise. Illustration 21 presents the following circumstance:

> Mortgagor holds Blackacre subject to two mortgages, held respectively by Mortgagee-1 and Mortgagee-2. Mortgagor sells Blackacre to Grantee, falsely stating to Grantee that Blackacre is subject only to the first mortgage and promising that Mortgagor will pay and satisfy that mortgage obligation with the proceeds of the sale. Grantee, believing this statement, makes no title examination and is unaware of the existence of the second mortgage. Grantee completes the purchase. Mortgagor uses the proceeds of the sale to satisfy the first mortgage but does not satisfy the second. Grantee is entitled to be subrogated to the rights of Mortgagee-1 as against Mortgagee-2 and may enforce the first mortgage against Mortgagee-2.

The comment concludes that "if the cash price paid by the grantee included the second mortgage balance, subrogation to, rather than extinction of, the first mortgage will result in order to prevent unjust enrichment of the second mortgagee." In other words, under the Restatement, the City's payment would bump B&B into the number one position without B&B having to take any action to warrant such an advancement. See, Newman Park, 177 Wn.2d at 575 (". . . absent subrogation, the third party's payment would bump the number two security interest into the number one position without the junior lienholder having taken any action to warrant such an advancement."). Thus, in Washington, under the circumstances presented here, absent the application of equitable subrogation B&B would be unjustly enriched.

9

B&B's contention that it will be materially prejudiced by the application of equitable subrogation is similarly unavailing. B&B offers examples of the difficulties it has suffered at the hands of its Borrowers, but it fails to explain how the application of equitable subrogation affects it in any material way. It bargained for a second position mortgage and in exchange for that risk, it obtained more favorable terms for the loan than it could have obtained otherwise.[3] Granting the City an equitable lien leaves B&B in the same bargained for position as it was before. The Borrowers' default on the loan and the decrease in value of the property are not effects attributable to subrogation.

B&B argues that Kim v. Lee, 145 Wn.2d 79, 31 P.3d 665 (2001), supports its claim that it will be prejudiced by equitable subrogation. But the case is distinguishable. Kim involved the parents' loan to purchase property for their children, secured by a deed of trust, with the children making payments. 145 Wn.2d at 82. The children later took out a new loan, secured by a new deed of trust, to pay off their parents' loan. Id. Kim had a judgment lien against the children that he claimed succeeded to first position when the parents' loan was paid off. Id. at 83. The Kim court held that the judgment lien had priority under the rule of replacement and modification. Id. at 90. Under the rule, modification will ordinarily cause a mortgage to lose priority to junior interests to the extent that the modification is materially prejudicial to those interests. Id. The loan to the

---

[3] "If the first-priority mortagee forecloses, then a second-priority mortagee knows he can recover any surplus remaining only after the first-priority mortagee has been fully satisfied. Therefore, second-priority mortages often include terms to help alleviate this risk, such as higher interest rates. It is unfair to allow a second-priority mortagee to take a first-priority but still enforce the previously bargained-for terms. He gains the security of a first-priority loan, while keeping the favorable conditions of a second-priority loan." Prestance, 160 Wn.2d at 564, n.4.

10

children was "not merely an extension of the maturity date or stretching out the installment payments of the existing mortgage; rather, it was a new mortgage and the change was from a 6-year maturity date to a 30-year maturity date." Id. The court found that these modifications materially prejudiced Kim, because they affected the loan's payoff time and Kim's ability to move into first priority. Id. Here, however, there was no modification or replacement of the MortgageIt loan and, as noted above, B&B does not explain how subrogating the City to first position puts B&B in any worse position than before.

We affirm the trial court's ruling and find that equitable subrogation should be applied in this case. Accordingly, the City shall have an equitable lien with priority over the B&B's deed of trust to the extent of the City's payment of the MortgageIt note.

### Foreclosure of the Equitable Lien

The City argues that if it is entitled to equitable subrogation, it must necessarily be entitled to foreclose on the resulting equitable lien because "[w]ithout the ability to foreclose, a lien is meaningless." Supp. Br. of Respondent at 1. According to the City, Ch. 6.21 RCW and case law allow an equitably subrogated party to foreclose its equitable lien, citing Olson v. Chapman, 4 Wn.2d 522, 104 P.2d 344 (1940), Worden v. Smith, 178 Wn. App. 309, 332, 314 P.3d 1125 (2013), and a string of earlier cases allowing tenants in common to

acquire and foreclose upon equitable liens.[4] The cited cases are inapposite. For example, in Olson and Worden, the principle cases on which the City relies, the county had a tax lien on the subject properties and the parties seeking subrogation to the lien had paid the taxes. In each case, the court permitted subrogation and ordered foreclosure to recover the amounts owed. In neither case did the subrogee, as the City does here, pursue foreclosure for the sole purpose of eliminating a subordinate lien.

Chapter 6.21 RCW, Sales Under Execution, is likewise unavailing. That statute allows a creditor to seek a sheriff's sale to execute against property owned by a debtor to satisfy a money judgment. But here, the City has no money judgment to enforce, nor could it have. It is uniformly recognized that a subrogee has no right to a personal judgment against a mortgagor as a mortgagee would. See 107 A.L.R. 785.[5] Thus, Ch. 6.21 RCW is inapplicable under the facts of this case.

---

[4] These cases include Burget v. Carolina, 31 Wash. 62, 71 P.724 (1903) (tenant in common paid taxes on property and court found she had stated a cause of action for declaring a lien on the land in that amount, and to have the lien foreclosed); Stone v. Marshall, 52 Wash. 375, 100 P. 858 (1909) (co-owner acquired a lien on the interests of others that could be foreclosed by a suit in equity, but not by a tax sale); and City of Spokane v. Sec. Savings Soc., 46 Wash. 150, 89 P.466 (1907) (court invalidated a local assessment lien to the City but awarded it a lien for delinquent general taxes).

[5] "A subrogee is, generally speaking, placed in the precise position of the one to whose rights he is subrogated, and is entitled to all the rights and securities and to the benefit of all the remedies which were available to such person. It follows from the very principles of the doctrine of subrogation that one cannot thereby succeed to or acquire any claim or right which the person for whom he is substituted did not have, the extent of his remedies and the measure of his rights being controlled by those possessed by the creditor, and those rights, claims, and securities to which he succeeds are taken subject to the limitations, burdens, and disqualifications incident to them in the hands of his predecessor. Beyond this he has no right and no valid claim for protection."

Nor does the City explain how its position, that it may properly foreclose on its equitable lien, is consistent with controlling authority. As previously discussed our supreme court has adopted in full Restatement (Third) § 7.6, which permits equitable subrogation under the circumstances presented here, but only "to the extent necessary to prevent unjust enrichment."

SourceCorp, Inc. v. Norcutt, 229 Ariz. 270, 274 P.3d 1204 (2012), a case cited by the City, is instructive. There, Sourcecorp obtained a substantial judgment against the Shills in September 2004. Id. at 272. The Shills owned property that was then subject to a first mortgage in favor of Zions National Bank (Zions Bank) that secured a debt of nearly $689,000. Id. Sourcecorp recorded its judgment lien against this property. Id. Accordingly, the property was then subject to both the first mortgage in favor of Zions Bank and the subordinate judgment lien in favor of Sourcecorp.

In November 2004, the Shills sold their property to the Norcutts for $657,000. Id. Zions Bank accepted $621,000 of these proceeds in full satisfaction of the note secured by the first mortgage. Id. While the opinion does not expressly say so, it appears the Shills told neither the closing agent nor the Norcutts about the substantial judgment lien also encumbering the property. Although the Norcutts purchased title insurance, the title insurance company failed to discover the judgment lien in favor of Sourcecorp in the public records. Id.

After closing of the sale, Sourcecorp sought a sheriff's sale of the Norcutts' property based on the judgment lien against it. Id. at 276. The Norcutts sued to enjoin the sale, and the trial court granted that relief. Id. The Norcutts

13

then argued that they were equitably subrogated to the first lien position of Zions Bank, which was prior to the judgment lien of Sourcecorp. Id. The trial court rejected this position. Id. at 272.

When the case reached the Supreme Court of Arizona, the Court noted there was some ambiguity in that state's case law regarding the proper test for equitable subrogation. But the Court resolved that ambiguity by adopting RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES, § 7.6. Sourcecorp, 229 Ariz. at 273.

When the court applied § 7.6 to the facts of the case, it concluded that the Norcutts were entitled to be equitably subrogated to the first mortgage lien position formerly held by Zions Bank. The extent of the subrogation was for the $621,000 they paid to that bank from the proceeds of sale at closing to fully satisfy the debt then owed by the Shills to the bank.

In addressing the argument of Sourcecorp that foreclosure of the equitable subrogation lien in favor of the Norcutts would be improper, the court stated:

> Recognizing that equitable subrogation depends on the facts of the particular case, see Mosher, 45 Ariz. at 468, 46 P.2d at 112, we conclude that it is not appropriate to confer on the Norcutts a right to "foreclose" on the interest to which they are subrogated. Instead, the purposes of equitable subrogation are fully served by deeming the Norcutts to have a priority to proceeds from any sale of the property in the amount they paid to satisfy the debt, $621,000.

Id. at 276. The court remanded the case to the trial court for entry of summary judgment in favor of the Norcutts, the subrogees of Zion Bank's first lien. But that relief was without the power to eliminate the subordinate judgment lien of Sourcecorp.

The similarities between Sourcecorp and this case are striking. There, the Shills' failed to disclose to the purchasers of their property the subordinate judgment lien in favor of Sourcecorp. Here, the City purchased the property from the Borrowers, who failed to disclose the existence of the subordinate deed of trust held by B&B. There, the title insurance company failed to discover the judgment lien that was subordinate to the first mortgage in favor of Zions Bank. Here, the title insurance company failed to discover the second deed of trust that was recorded in the public records at the time of the closing of the sale. There, the closing agent disbursed part of the purchase price funds to satisfy the first mortgage to Zions Bank without paying the subordinate lien. Here, the closing agent disbursed part of the purchase funds to satisfy the first mortgage without paying the debt secured by the second deed of trust. And, notably, both jurisdictions have adopted the same provision of RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES, § 7.6.

Applying the Restatement and the reasoning from Sourcecorp, we find that the prevention of unjust enrichment does not extend so far as to grant the City the right to foreclose on its equitable lien. The equitable purpose of subrogation is fully served by permitting the City to succeed to first position with priority of right to proceeds, in the amount of its equitable lien, from any sale. Equity is preserved by allowing B&B to retain its second position lien. To the extent that B&B's lien adversely affects the City's equity or renders the Property less marketable, we neither address nor foreclose any claims the City may have against its title insurer.

We affirm the grant of equitable subrogation and creation of an equitable lien to the extent of the City's payment of the MortgageIt loan. The City's lien has priority over B&B's deed of trust. We reverse the order permitting the City to foreclose on its equitable lien and remand to the trial court for entry of judgment consistent with this opinion.

Affirm in part, reverse in part, and remand for entry of judgment.

WE CONCUR:

_Specimen, C.J._

_Dwyer, J._

## Bel Air & Briney, et al. v. City of Kent, No. 71544-5-I

COX, J. (concurring) — I concur. I write separately to address additional aspects of the City's attempt to clear title to its property by use of a sheriff's sale. Namely, the City seeks to extinguish the subordinate deed of trust held by Bel Air & Briney that encumbers the property.

The trial court's amended judgment ordering foreclosure states that:

> "upon completion of such Sheriff's Sale, Bel Air & Briney's Lien upon the Property shall be *extinguished* and Bel Air & Briney, and any and all persons claiming by, through, or under them, shall be forever barred and foreclosed from any right, title, interest, lien, or estate in and to the [City's] Property . . . ."[1]

The question is whether it is proper to use the sheriff's sale statutes to extinguish the lien of the Bel Air & Briney deed of trust against the City's property. Specifically, may the City enforce its equitable subrogation lien arising from the former MortgageIt, Inc. deed of trust, which has a higher lien priority, against the subordinate Bel Air & Briney deed of trust?

The lead opinion discusses why the City is entitled to be equitably subrogated to the lien priority of the former MortgageIt, Inc. deed of trust, to the extent the City paid the obligation secured by that encumbrance. Moreover, the opinion correctly concludes that the City is not entitled to foreclose its equitable subrogation lien due to prejudice to Bel Air & Briney.

In seeking to obtain clear title to its property in this case, the City ignores the fact that it holds two distinct interests in its property. First, it holds title to the property by virtue of the deed from Ms. Hoang Tran, the former owner. Second,

---

[1] Clerk's Papers at 410-11 (emphasis added).

it also holds a first lien by equitable subrogation because it paid off the obligation to MortgageIt, Inc., which was secured by a deed of trust held by that lender. Distinct rights are associated with these distinct property interests.

These distinct interests in the property do not merge, as the City properly concedes. As the City correctly states "the merger doctrine [does not] defeat the equitable subrogation rights of the City of Kent."[2] Specifically, because merger is a question of intent, there is a presumption that the City did not intend its two interests in the property to merge. This is consistent with long-standing case law:

> the existence of a junior, or intervening, encumbrance or equity will, in the absence of a showing of an intention to the contrary, prevent a merger of a prior mortgage in the fee, where the continued existence of the mortgage is necessary to protect the mortgagee against the intervening, junior claims.[3]

Any right to clear title that the City may have arises from its interest as the holder of title to the property. This stems from the warranties arising from the statutory warranty deed that Ms. Tran, the former owner of the property, presumably signed and delivered at the closing of the sale.[4]

Of course, Bel Air & Briney was not a party to the deed given by Ms. Tran. And Bel Air & Briney never represented to the City that title to the property was clear of encumbrances. To the contrary, Bel Air & Briney always claimed the property was subject to its deed of trust.

---

[2] Respondent's Statement of Additional Authorities Pursuant to RAP 10.8 at 1.

[3] Gill v. Strouf, 5 Wn.2d 426, 431, 105 P.2d 829 (1940).

[4] RCW 64.04.030(2) ("that the [property is] then free from all encumbrances"); Ensberg v. Nelson, 178 Wn. App. 879, 886, 320 P.3d 97 (2013), review denied, 180 Wn.2d 1012 (2014).

2

Accordingly, the claim of a *right* to clear title by the City primarily arises from its status as title holder to the property. This status is distinct from the grant of an equitable subrogation lien against its property. It is the status of lien holder that would, ordinarily, permit foreclosure under the sheriff's sale statutes. The status of title holder does not. There simply is no authority for the City to use the sheriff's sale statutes to extinguish the lien of Bel Air & Briney's deed of trust against the City's property under the circumstances of this case.

For the reasons discussed in the lead opinion and here, I concur.

Cox, J.