NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

U.S. BANK NATIONAL ASSOCIATION, *Plaintiff/Appellant*,

*v.*

DAWN R. ADRIAN, *Defendant/Appellee*.

No. 1 CA-CV 20-0488
FILED 3-3-2022

Appeal from the Superior Court in Maricopa County
No. CV2018-000828
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Fidelity National Law Group, Phoenix
By Brian J. Cosper
*Counsel for Plaintiff/Appellant*

Murphy Law Firm, Inc., Phoenix
By Thomas J. Murphy
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

---

Chief Judge Kent E. Cattani delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Brian Y. Furuya joined.

---

**C A T T A N I**, Chief Judge:

¶1　　　　U.S. Bank, NA, as Trustee for the RMAC Trust, Series 2016-CTT ("US Bank") appeals from the entry of summary judgment against it on claims for equitable subrogation and unjust enrichment. For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2　　　　In 2007, Dawn Adrian owned real estate (the "Property") in Peoria as her sole and separate property. At her husband's request, Adrian agreed to pledge the Property as collateral to secure a business loan for her husband's brother, William Underwood. As part of this transaction, (1) Underwood received a $550,000 loan from Custom Lot Finance, LLC, (2) Underwood granted the lender a deed of trust against his business's commercial property as collateral, and (3) Adrian granted the lender a deed of trust against the Property as collateral (the "Custom Lot DOT"). The $550,000 promissory note is not part of the record, so the terms of that loan are unknown. The parties do not dispute, however, that only Underwood received (or even had access to) the loan funds and only Underwood made payments on the debt.

¶3　　　　The Custom Lot DOT was recorded two days after Adrian executed it. That same day, Underwood's attorney told Adrian that she needed to add Underwood as a co-owner of the Property "to complete the loan process." In response, Adrian gratuitously granted Underwood an undivided one-half interest in the Property. A deed reflecting this transfer (and the resulting tenancy in common shared by Adrian and Underwood) was recorded one week after the Custom Lot DOT.

¶4        In 2008, Underwood took out a new, $313,000 loan from Quicken Loans.[1]  Consistent with payoff instructions from the prior lender (and apparently as authorized by the $550,000 promissory note), $300,000 of the new loan was paid directly to Custom Lot Finance to obtain a release of the Custom Lot DOT.  After an unexplained delay, a deed releasing the Custom Lot DOT was ultimately recorded in exchange for that payment.  As part of the Quicken transaction, Underwood falsely represented to Quicken that he was the Property's sole owner.  Quicken apparently relied on Underwood's misrepresentation, despite the fact that the Property's recorded deed listed Adrian and Underwood as tenants in common and that Adrian alone appeared on the Custom Lot DOT.  Thus, although Underwood granted Quicken a deed of trust (the "Quicken DOT") as collateral for the new loan, the Quicken DOT encumbered only Underwood's one-half interest in the Property.  Adrian did not sign the Quicken DOT, and it did not attach to her interest in the Property.  The parties do not dispute that Adrian was not aware of the Quicken transaction (or of Underwood's misrepresentation), much less a party to it.

¶5        Underwood passed away in mid-2016, and either he or his estate apparently defaulted on the note secured by the Quicken DOT.[2]  Because the Quicken DOT only encumbered Underwood's interest in the Property, the debt was not fully secured.  Quicken's successors-in-interest, now US Bank, sued Adrian as well as Underwood's widow and heirs seeking (as later clarified) equitable subrogation to the Custom Lot DOT or, alternatively, an equitable lien against the entire Property based on unjust enrichment.

¶6        US Bank then moved for summary judgment, and Adrian opposed and cross-moved for summary judgment in her favor.  After oral argument, the superior court denied US Bank's motion and granted Adrian's.  US Bank moved for reconsideration, which the court denied.

---

[1]        The promissory note evidencing the $313,000 loan is not part of the superior court record, so the terms of this loan, too, are unknown.

[2]        No evidence of record establishes that Underwood or his estate defaulted, much less the date of default.  Although US Bank's statement of facts in support of its motion for summary judgment says that Underwood defaulted, the affidavit offered as evidentiary support does not.  Nevertheless, because Adrian does not controvert US Bank's assertion that Underwood defaulted, and given our resolution on the merits, we accept US Bank's assertion as true.

¶7            The court later entered a default judgment against Underwood's widow and heirs, then entered a final judgment in Adrian's favor.  US Bank timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶8            US Bank asserts that the superior court misconstrued the facts and misapplied the law, requiring not just reversal of the judgment in Adrian's favor but entry of summary judgment in US Bank's favor.

¶9            Summary judgment is proper when there are no genuine disputes of material fact and, based on those undisputed facts, the moving party is entitled to judgment as a matter of law.  Ariz. R. Civ. P. 56(a); *see also Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990).  A plaintiff seeking summary judgment must "submit[] undisputed admissible evidence that would compel any reasonable juror to find in its favor on every element of its claim." *Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 293, ¶ 20 (App. 2010).  In contrast, a defendant moving for summary judgment may prove entitlement to judgment as a matter of law by "point[ing] out by specific reference to the relevant discovery that no evidence exist[s] to support an essential element of the [plaintiff's] claim." *Orme Sch.*, 166 Ariz. at 310.  We review the grant of summary judgment de novo, viewing the facts in the light most favorable to the party against whom judgment was entered. *Weitz Co. v. Heth*, 235 Ariz. 405, 409, ¶ 11 (2014); *Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 213, ¶ 14 (App. 2012).  And we may affirm summary judgment if it is correct for any reason. *Federico v. Maric*, 224 Ariz. 34, 36, ¶ 7 (App. 2010).

## I.     Equitable Subrogation.

¶10            Relying on *Sourcecorp, Inc. v. Norcutt*, US Bank argues that the undisputed facts proved its entitlement to equitable subrogation. *See* 229 Ariz. 270 (2012).  In *Sourcecorp*, the Arizona Supreme Court adopted the Restatement approach to equitable subrogation. *Id.* at 272–73, ¶¶ 5, 12; *see also* Restatement (Third) of Property: Mortgages § 7.6 (1997).  As the court described, generally, "a person having an interest in property who pays off an encumbrance in order to protect his interest is subrogated to the rights and limitations of the person paid," at least to the extent necessary to avoid an "unearned windfall" (that is, unjust enrichment). 229 Ariz. at 272, ¶ 5 (citations omitted).  But while US Bank describes the instant case as "a textbook unjust enrichment scenario" entitling it to equitable subrogation

under *Sourcecorp*, the situation presented here is far different from the one described there.

¶11          In *Sourcecorp*, new owners purchased a residential property for $667,500 cash. *Id.* at ¶ 2. The property had been subject to a first mortgage securing a debt of approximately $689,000, although the mortgage lender accepted $621,000 of the sale proceeds in full satisfaction of the debt. *Id.* Unbeknownst to the new owners (and undiscovered by the new owners' title insurer), Sourcecorp held an over-$3 million judgment against the prior owners and had recorded a judgment lien (junior to the first mortgage) against the property. *Id.* at 271–72, ¶¶ 1–2. When Sourcecorp attempted to foreclose on its judgment lien, the new owners argued that they were equitably subrogated to the mortgage lender's priority—senior to Sourcecorp's judgment lien. *Id.* at 272, ¶ 3. The Arizona Supreme Court ultimately agreed, holding that the new owners were subrogated to the mortgage lender's priority over Sourcecorp's lien and thus entitled to "priority to proceeds from any sale of the property in the amount they paid to satisfy the debt, $621,000." *Id.* at 276, ¶ 29; *see also id.* at 274–75, ¶¶ 17, 21, 24.

¶12          This case, in contrast, does not involve a simple priority dispute—US Bank is not seeking to jump the priority of its existing lien encumbering Underwood's interest in the Property, but rather to expand the scope of its lien to encumber someone else's property. In *Sourcecorp*, the court reasoned that the new owners could seek equitable subrogation "to protect their concurrently acquired interest in the property." *Id.* at 274, ¶ 17. But here, no one disputes that US Bank already has a first-priority lien against the Property in the form of the existing Quicken DOT encumbering Underwood's interest; US Bank need not invoke equitable subrogation to "protect" this interest.

¶13          Here, US Bank is attempting to do far more than the new owners in *Sourcecorp*. It seeks to use equitable subrogation to *expand* its own interest at the expense of an admittedly innocent third-party's interest in the Property. And the undisputed facts show that Adrian was truly an *innocent* third-party: there is no evidence that Adrian was personally liable on either of the notes involved,[3] and the parties agree that Adrian did not

---

[3]      The record is arguably ambiguous with regard to the Custom Lot Finance note, but Adrian's affidavit unequivocally (and with no contrary evidence, as opposed to argument, from US Bank) explained that "[her] only involvement with the consummation of the Custom Lot Finance loan

receive any direct financial benefit from either of the loans—and did not even know of the Quicken transaction. US Bank is essentially attempting to encumber property that belongs to someone who was a stranger to—and in fact had no knowledge of—the contractual agreement it is attempting to enforce. We decline to expand *Sourcecorp*'s holding to effect the creation of a new lien encumbering an innocent third-party's property under these circumstances.

## II.     Unjust Enrichment.

**¶14**          US Bank argues that, equitable subrogation aside, it is entitled to an equitable lien against Adrian's interest in the Property based on unjust enrichment. An unjust enrichment claim requires proof of: "(1) an enrichment, (2) an impoverishment, (3) a connection between the two, (4) an absence of justification for the enrichment and impoverishment and (5) the absence of any remedy at law." *Loiselle v. Cosas Mgmt. Grp., LLC*, 224 Ariz. 207, 210, ¶ 9 (App. 2010) (citation omitted).

**¶15**          US Bank argues that Adrian "was unquestionably enriched" by the Quicken loan, asserting that the "proceeds were used to pay off a significant personal debt" and obtain a release of the Custom Lot DOT previously encumbering the Property. Preliminarily, nothing in the record suggests that Adrian received any direct financial benefit from either loan: Underwood received the proceeds and made payments on both debts. Moreover, as noted above, *see supra* n.3—and despite US Bank's cursory argument to the contrary—the record is not at all clear that Adrian was personally liable for Underwood's loan from Custom Lot Finance. And while the proceeds from Underwood's Quicken loan *were* used to release the Custom Lot DOT, there is no evidence that the terms imposed by the Quicken loan were comparable to the terms of the debt secured by the Custom Lot DOT—and it is undisputed that Adrian did not agree to provide collateral for the second loan, regardless of its terms. And the two transactions were markedly different in at least one critical way: unlike the Quicken loan, Underwood's initial loan from Custom Lot Finance was collateralized not just by the Custom Lot DOT against Adrian's Property but also by a deed of trust against Underwood's commercial property. Although the record does not clearly establish whether this additional collateral would have sufficed to pay off the loan secured by the Custom

---

was appearing at the offices of [Underwood's attorney] on June 5, 2007 to sign the deed of trust"—not the note.

Lot DOT, it illustrates that this is not a simple case of one lender stepping into the shoes of a prior lender.

**¶16**        In sum, to the extent US Bank and its predecessors suffered a loss, it was not as the result of any action or inaction by Adrian that enriched her. Instead, the loss resulted from Underwood's misrepresentation that he owned property he did not own and the lender's failure to debunk that misrepresentation by confirming chain of title. Even acknowledging that, as US Bank asserts, a lender's (or a lender's title insurer's) negligent failure to discover who truly owned the Property is insufficient to show unclean hands as a defense, *see Weiner v. Romley*, 94 Ariz. 40, 43 (1963), that failure is relevant to the connection between Adrian's purported enrichment and US Bank's loss. Accordingly, because US Bank failed to provide evidence of a cognizable, unjustified enrichment linked to US Bank's impoverishment-by-undersecured-debt, the superior court properly granted summary judgment in Adrian's favor on US Bank's unjust enrichment claim.

## CONCLUSION

**¶17**        The judgment is affirmed. Adrian requests an award of attorney's fees under A.R.S. § 12-341.01. In an exercise of our discretion, we decline her request.



AMY M. WOOD • Clerk of the Court
FILED:    AA