# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| MARY MATTHEWS, an individual and her marital community, J. HAPPY NELSON, an individual and his marital community, OWEN RYAN, an individual KEN DEFRANG, an individual and ELLEN DEFRANG, an individual, <br><br>        Appellants, <br><br> v. <br><br> ISLAND LANDMARKS, a Washington nonprofit corporation, <br><br>        Respondent. | No. 73426-1-I <br><br><br><br><br> DIVISION ONE <br><br><br> UNPUBLISHED OPINION <br><br><br> FILED: April 4, 2016 |

SPEARMAN, C.J. — Two groups, one led by Mary Matthews and the other by Ellen Kritzman, claim to be the rightful board of directors of a nonprofit corporation. The Kritzman group brought suit in the name Island Landmarks seeking a declaration that it was the rightful board. The trial court granted summary judgment to the Matthews group. On appeal, this court concluded that portions of the bylaws were unclear and extrinsic evidence was necessary to interpret them. We reversed and remanded. On remand, the trial court granted summary judgment for the Kritzman group. The Matthews group appeals, arguing that the trial court erred in considering inadmissible evidence and in its interpretation of the bylaws.

Because the declaration that the Matthews group objects to contains hearsay, we reverse in part the trial court's admission of the evidence. But reviewing the record without reference to the inadmissible evidence, we conclude that the trial court correctly interpreted Island Landmarks' bylaws. We affirm.

BACKGROUND

Island Landmarks was incorporated in 1995 with the purpose of "promot[ing] historic preservation of architecture, landscape, and heritage of Vashon and Maury Islands." Clerk's Papers (CP) at 19. Its membership is "open and unlimited" to all persons who have the same specified interest and who "qualify for membership" by paying annual dues of $25.00. CP at 26. Members elect directors of the nonprofit each year. Members may remove directors with or without cause.

Matthews and Kritzman were both involved in the formation of Island Landmarks. Kritzman was an incorporating director and Matthews was the officer who managed day-to-day operations. In its early years, Island Landmarks had approximately 200 members and enjoyed widespread community support.

The nonprofit was particularly interested in restoring and preserving the Mukai Farm and Garden, a King County historic landmark. Island Landmarks obtained donations and public grants that enabled it to purchase the Mukai property in 2000. After the purchase, Island Landmarks struggled to manage grant money and to maintain the Farm and Garden. The corporation experienced a high turnover of directors.

Matthews and her husband, J. Nelson Happy, became board members in 2001. Happy lived out of state and Matthews moved out of state near the end of 2001. Matthews and Happy retained their positions as president and vice president of the board. By 2002, the nonprofit had only about ten members.

In the late 2000s, Kritzman became frustrated by the nonprofit's lack of activity on Vashon Island and its alleged neglect of the Mukai property. Kritzman began meeting with community members to generate interest in regaining control of Island Landmarks and "rescuing" the Mukai property. CP at 437.

The Matthews group held a board meeting on September 16, 2010. At that time, there were five board members: Matthews, Happy, Ken and Ellen DeFrang, and Owen Ryan. The minutes of the board meeting list three members in addition to the board: Priscilla Beard, Ellen Granger, and David Hall. DeFrang deposited dues payments from the members into the Island Landmarks account. No dues were deposited in 2011 or the first five months of 2012.

In May 2012, Kritzman drafted an Island Landmarks membership form declaring interest in historic preservation on Vashon Island. About 60 people completed the form and wrote checks for $25.00 to Island Landmarks. Kritzman deposited these checks as dues payments into the Island Landmarks bank account without informing Matthews. Eleven of the new members called a special meeting. They sent notice to each of the new members. They also sent notice to the last known board members: Matthews, Happy, Ken and Ellen DeFrang, and Owen Ryan. At the special meeting, the new members voted out the old board and elected a new slate of directors.

3

The Kritzman group brought this suit in the name Island Landmarks, seeking a declaration that it was the rightful board. The Matthews group moved for summary judgment arguing that the special meeting was invalid under the corporation's bylaws because members could only call a special meeting through the corporation's secretary. The Matthews group also argued that the bylaws contained treasury and recordation requirements for membership that the Kritzman group had failed to satisfy. Matthews asserted that an applicant only obtained membership after delivering dues to the treasurer, delivering a completed application to the secretary, and having her name entered in the membership records of the corporation. The trial court agreed with Matthews and dismissed Kritzman's suit on summary judgment.

On appeal, we reversed and remanded. Island Landmarks v. Matthews, 178 Wn. App. 1030 (2013). In Island Landmarks I, we held that under the plain language of the bylaws ten percent of the "members entitled to vote" may call and notice a special meeting. Id. at 4. We concluded, however, that the record was insufficient to resolve the parties' conflicting arguments regarding membership and that extrinsic evidence was necessary to ascertain the corporation's intent regarding its membership requirements and procedures. Id. at 6-8. We also ruled that a genuine question of fact existed as to whether the Kritzman group provided notice to each member of the corporation. Id. at 8.

On remand, the Matthews group submitted evidence including the declaration of Priscilla Beard, in which she stated that she was an Island Landmarks member and that she did not receive notice of the special meeting.

4

The Matthews group also produced a declaration in which Matthews testified to the corporation's practice concerning accepting new members. Despite repeated requests for production, the Matthews group failed to produce corporate receipt books or membership records for recent years.

The Kritzman group submitted, among other items, their membership forms and records of their dues payments. The Kritzman group submitted statements from the Island Landmarks bank account showing that no dues were deposited into the account after September 2010 until the Kritzman group deposited their dues in May 2012. The Kritzman group also submitted the declaration of the drafter of the bylaws, Frederic Kutscher, and a checklist that Kutscher had used to help the incorporating directors determine the structure of the corporation. The Matthews group moved to strike the declaration as hearsay.

The trial court granted summary judgment for the Kritzman group. The court found that the membership forms and the deposits into Island Landmarks' account established that the Kritzman group were members of the corporation authorized by the bylaws to replace the existing board. The trial court further found that the Kritzman group had met the notice requirement. The court listed the Kutscher declaration among items considered and thus implicitly denied the Matthews group motion to strike the declaration.

The Matthews group appeals, asserting that the trial court erred in considering the Kutscher declaration and in adopting an erroneous interpretation of the corporation's bylaws. The Matthews group also argues that the trial court

erred in denying its motion for reconsideration and in failing to apply the doctrine of unclean hands to bar the Kritzman group's claim.

DISCUSSION

The Matthews group first argues that the trial court erred in considering the Kutscher declaration because it was irrelevant and contained hearsay.

This court reviews a trial court's order granting summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party. Bel Air & Briney v. City of Kent, 190 Wn. App. 166, 172, 358 P.3d 1249 (2015) review denied, No. 92373-6, 2016 WL _____ (Mar. 02, 2016) (citing Columbia Cmty. Bank v. Newman Park, LLC, 177 Wn.2d 566, 573, 304 P.3d 472 (2013)). The de novo standard applies to evidentiary rulings on admissibility. Keck v. Collins, 184 Wn.2d 358, 368, 357 P.3d 1080 (2015) (citing Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301(1998)). Affidavits in support of a summary judgment motion must contain facts that would be admissible in evidence. CR 56(e).

The Matthews group argues that Kutscher's declaration was not relevant because he was not an incorporating director. Evidence is relevant if it has "any tendency" to make any material fact more or less probable. ER 401. In interpreting bylaws, courts look to extrinsic evidence including evidence of the "circumstances leading to" adoption of the bylaws. Roats v. Blakely Island Maintenance Comm'n, Inc., 169 Wn. App. 263, 274, 279 P.3d 943 (2012). Kutscher was the incorporator and drafter of the bylaws. His statements are evidence of the circumstances leading to the adoption of the bylaws. We reject the Matthews group's assertion that the declaration is irrelevant.

6

The Matthews group also argues that the Kutscher declaration contains hearsay. Hearsay is a statement of a declarant offered to prove the truth of the matter asserted. ER 801(c). Kutscher's declaration includes statements describing the bylaws and his understanding of the bylaws. These are not hearsay. But the declaration also includes statements expressing Kutscher's belief as to the intention of the incorporating directors. These statements purport to speak for the incorporating directors, and are thus hearsay. The hearsay statements were not admissible and we do not consider them here.

The Matthews group next raises several challenges to the trial court's interpretation of the bylaws. A corporation's bylaws are interpreted according to the rules of contract interpretation. Roats, 169 Wn. App. at 273-74. The purpose of contract interpretation is to determine the intent of the contracting parties. Id. at 274. Washington courts apply the "context rule" of contract interpretation. Id. Under the "context rule," meaning is ascertained from the contract as a whole as well as extrinsic evidence. Id. The circumstances leading to the execution of the contract and the later conduct of the parties may provide evidence of the parties' intent. Id. Summary judgment as to contract interpretation is appropriate only when the interpretation does not depend on the use of extrinsic evidence or when extrinsic evidence indicates that only one interpretation can reasonably be inferred. Go2Net, Inc., v. C I Host, Inc., 115 Wn. App. 73, 85, 60 P.3d 1245 (2003).

The disputed issue is Island Landmarks' membership provision. Bylaw section 2.2 states:

> Qualification of Members. Membership shall be open and unlimited to all persons who have an interest in promoting historic preservation of architecture, landscape, and heritage of Vashon and Maury Islands situated in King County, Washington. In order to qualify for membership, a member shall pay annual membership dues which shall initially be $25.00. Annual dues may be established and changed from time to time by a majority vote of the membership of the Board. Members may have such other qualifications as the Board may prescribe by amendment to these Bylaws.

CP at 26.

The Matthews group argues that the rules of a voluntary membership organization may only be interpreted by that organization. It asserts that interpretation of Island Landmarks' bylaws was nonjusticiable or, if justiciable, the court was required to defer to the interpretation of the incumbent directors. The Matthews group is mistaken.

The Matthews group relies primarily on Anderson v. Enterprise Lodge No. 2, 80 Wn. App. 41, 906 P.2d 962 (1995). Anderson concerned a dispute among members, former members, and branches of the Order of Odd Fellows, an international fraternal organization. Id. at 42. In determining whether the association had violated its bylaws, the Anderson court looked to cases involving disputes between local chapters of national or international associations and the parent organization. Id. at 46-47. Anderson held that courts generally "refrain from interfering in the internal affairs" of such associations and defer to the association's own interpretation of its rules unless that interpretation is arbitrary or unreasonable. Id. at 46. But because Island Landmarks is a discrete corporation, not a local chapter of a national association, Anderson is inapposite.

8

Next, the Matthews group asserts that the trial court erred in finding that the Kritzman group became members of Island Landmarks under bylaw § 2.2. The Matthews group argues that, since the relationship between a corporation and its members is contractual, it requires mutual assent. Matthews argues that because Island Landmarks did not accept the Kritzman group as members, they did not become members of the corporation.

The Matthews group relies on Schroeder v. Meridian Improvement Club, 36 Wn.2d 925, 932, 221 P.2d 544 (1950). Matthews asserts that Schroeder stands for the proposition that an applicant may not become a member of a corporation unless the corporation accepts the applicant as a member. The Matthews group's reliance is misplaced.

In Schroeder, the court considered whether any of the plaintiffs were members who could bring an action against a corporation for violating its bylaws. Id. at 929. To answer this question, the Schroeder court looked to the articles and bylaws of the corporation. Id. at 929-931. The corporation's membership provision stated that "[a]ny property owner or resident within the confines of the district" was "[e]ligible for membership on payment of yearly dues . . . ." Id. at 929. The Schroeder court held that "'eligible' means suitable, qualified, fit, worthy, capable of being chosen." Id. at 932 (quoting State ex rel. Reynolds v. Howell, 70 Wash. 467, 126 P.954 (1912)). The court held that merely being eligible did not guarantee membership. Id. The Schroeder court noted that membership in a "voluntary association is a privilege which may be accorded or

withheld, and not a right which can be gained independently." Id. (quoting 4 Am.Jur. 462, Associations and Clubs, § 11).

Schroeder does not stand for the proposition that a requirement of corporate acceptance must be read into a corporation's governing documents. Membership in a voluntary association is a privilege. But the requirements and procedures for obtaining that privilege are established in the corporation's articles and bylaws. Id. at 930. To determine if the Kritzman group were members of Island Landmarks, the trial court properly looked to the membership provisions in the corporation's bylaws.

The Matthews group next argues that Island Landmarks' membership provisions are analogous to those in Schroeder. The Matthews group asserts that the Kritzman group merely met eligibility requirements and, as in Schroeder, the corporation had no obligation to accept them as members. The Matthews group is mistaken. The bylaws in Schroeder established a prerequisite for eligibility. The bylaws in the present case establish a prerequisite for membership.

In Schroeder, the membership provision stated that "any property owner or resident within the confines of the district shall be eligible for membership." Id. at 929 (emphasis added). Residence in the district was the prerequisite. Meeting that prerequisite made an applicant "eligible" or, as the Schroeder court phrased it, "capable of being chosen." Id. at 932. If chosen by the corporation, an applicant was required to pay yearly dues to complete the membership requirements. Id. at 929.

10

The membership provision in this case, bylaw § 2.2, states that "<u>membership shall be open and unlimited to all persons</u> who have an interest in promoting historic preservation of architecture, landscape, and heritage of Vashon and Maury Islands." CP at 26. (Emphasis added). An interest in historic preservation on Vashon Island is the prerequisite. But meeting the prerequisite does not merely make an applicant eligible. The "open and unlimited" clause guarantees "membership" to "all persons" who have the specified interest. The only further requirement is stated in the next sentence: "In order to qualify for membership, a member shall pay annual membership dues which shall initially be $25.00." CP at 26. The membership provision in this case is not analogous to that in <u>Schroeder</u>. The plain language of § 2.2 indicates that the corporation "shall" extend membership to "all persons" interested in historic preservation on Vashon Island who pay annual dues.

Extrinsic evidence supports this reading. Matthews stated that to her knowledge the corporation had never refused membership to anyone who expressed an interest in the organization and paid dues. She stated that in general, a person seeking to become a member would fill out a membership form expressing interest in historic preservation and send it to the corporation with the $25 dues payment. But Matthews also stated that the corporation often admitted members who had not completed a membership form and sometimes waived the requirement to pay annual dues. This testimony supports the conclusion that membership was "open and unlimited to all persons" interested in historic preservation on Vashon Island.

11

The Matthews group, however, argues that other provisions in Island Landmarks' bylaws create membership requirements not stated in § 2.2. The Matthews group relies on three provisions. Bylaw § 4.9 concerns the office of treasurer. It specifies that the treasurer:

> shall have charge and custody of and be responsible for all funds and securities of the corporation; receive and give receipts for the moneys due and payable to the corporation from any source whatsoever, and deposit all such moneys in the name of the corporation...; and in general perform all of the duties incident to the office of Treasurer. . . .

CP at 33. Bylaw § 4.8(d) concerns the office of secretary. It states that the secretary "shall ... keep records of the post office address and class, if applicable, of each member. . . ." CP at 33. Bylaw § 5.1 address administrative provisions. It states that the corporation "shall keep...records of the name and address and class, if applicable, of each member and Director...; and such other records as may be necessary or advisable." CP at 34.

The Matthews group argues that these provisions establish two further requirements for membership: delivery of dues to the treasurer, demonstrated by a receipt from the treasurer; and recordation by the secretary in the corporate membership list. This interpretation is not supported by the text of the governing documents or by extrinsic evidence.

Bylaws § 4.8 and § 4.9 are located in the article titled "Officers." CP at 32-34. The article outlines the roles and duties of each office and requires generally that each officer perform "all duties incident" to the office. CP at 33-34. Receiving corporation money and issuing receipts are responsibilities of the treasurer, while

12

keeping corporation records is the secretary's responsibility. Bylaw § 5.1 is located in article 5, which addresses "administrative provisions." CP at 34. The provision states that the corporation has a duty to keep records, including records of members, directors, and officers. The cited provisions, read in context, describe duties of the corporation and its officers, not membership requirements.

Extrinsic evidence supports this reading. Kutscher, the drafter of the bylaws, stated that the provisions concerning the secretary and treasurer were "standard parts of [his] forms." CP at 1155. The provisions thus do not reflect any specific intent on the part of the incorporating directors. Kutscher stated that the provisions were intended only to describe the responsibilities of each office. CP at 1154-55.

Evidence produced by the Matthews group does not support its assertion that bylaws § 4.8, § 4.9, and § 5.1 create membership requirements. Matthews declared that it was the corporation's practice for the treasurer to handle money and issue receipts or thank you letters for dues. The Matthews group produced some thank you letters from 1995-96, but failed to produce a corporate receipt book or evidence that receiving a receipt was a necessary step in becoming a member. Similarly, Matthews declared that it was corporate practice for the secretary to record an applicant's name and address in the corporation's records. The Matthews group produced a "membership tracking" list from the 1990s, but failed to produce evidence that the corporation regularly maintained a membership record or that being entered into such a record was a requirement of membership.

13

To the contrary, Matthews's testimony as well as documentary evidence indicate that Island Landmarks was extremely flexible in its membership practices. Matthews stated that the corporation accepted in-kind donations in lieu of dues payment, but produced no evidence that the corporation kept records of such donations. Several of the people listed as members in 2010 received their membership as a gift. These new members, many of whom lived out of state, did not express interest in historic preservation on Vashon Island or fill out a membership form. The Matthews group did not produce evidence that these new members received receipts or that their names were entered on any regularly maintained corporate membership record.

Based on the plain language of the bylaws' membership provision, the context of the bylaws as a whole, and extrinsic evidence, the only reasonable interpretation is that membership in Island Landmarks is "open and unlimited to all persons" who share the corporation's purpose and pay annual dues. The members of the Kritzman group accordingly became members of Island Landmarks in May 2012 by completing a form declaring their interest in historic preservation and paying dues into the Island Landmarks account.

Next, the Matthews group challenges the trial court's finding that the Kritzman group satisfied the notice requirement. The Matthews group argues that Priscilla Beard, who last paid dues in September 2010, was a member of Island Landmarks in May 2012. Because Beard did not receive notice of the special meeting, the Matthews group argues that there is at least a question of fact as to whether the Kritzman group satisfied the notice requirement.

The trial court found, based on the text of the bylaws and the undisputed evidence as to who had paid dues in the twelve months prior to the special meeting, that there was no material dispute concerning who was a member of Island Landmarks in May 2012. We agree. The bylaws allow for an expansive membership, open to "all persons" interested in historic preservation. The only qualification for membership is the payment of "annual membership dues." CP at 26. (Emphasis added).

The Matthews group asserts that the bylaws do not explicitly state that failure to pay dues results in loss of membership, and the trial court erred in reading in such a provision. It also argues that corporate practice indicates that members remained members as long as the corporation knew who they were. This reading contradicts the bylaws, which state that a member "shall pay annual dues." The interpretation is also unreasonable, as it allows the corporation to retain or exclude previous members at will. We conclude that the failure to pay annual dues results in loss of membership. The Matthews group has not raised a question of fact as to whether the Kritzman group provided notice of the special meeting to all current members in May 2012.

The Matthews group next asserts that the trial court erred in failing to apply the doctrine of unclean hands to bar the Kritzman group's claims. This argument is without merit. Unclean hands is a defense to an action seeking equitable relief.[1] <u>Portion Pack, Inc., v. Bond</u>, 44 Wn.2d 161, 170, 265 P.2d 1045

---

[1] The Matthews group cites no authority for the proposition that the Kritzman group's action seeking a declaratory judgment sounded in equity. The Kritzman group, however, does not dispute the applicability of the unclean hands doctrine.

(1954). A court of equity will not intervene on behalf of a party whose conduct has been unconscionable. Id.

The parties dispute control of a nonprofit corporation. The rights and duties of a corporation's members are established in the corporation's governing documents. RCW 23B.02.020; 23B.02.060. Directors of a corporation have a duty to act in good faith in the best interests of the corporation. RCW 23B.08.300(1). The Matthews group has not produced evidence that the Kritzman group violated the corporation's bylaws. The Matthews group has provided no argument that the Kritzman group's actions were not undertaken in the best interests of the corporation or were harmful to the corporation.

Finally, the Matthews group argues that the trial court erred in denying its motion to reconsider. We review a trial court's decision on a motion to reconsider for abuse of discretion. A trial court may grant a motion to reconsider when the motion is based on newly discovered evidence which the party "could not with reasonable diligence have produced" at the hearing. CR 59 (a)(4). A trial court abuses its discretion if its decision is "manifestly unreasonable, based on untenable grounds, or based on untenable reasons." Moreman v. Butcher, 126 Wn.2d 36, 40, 891 P.2d 725 (1995) (quoting State ex rel Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

The Matthews group argues that its deposition of Kutscher, taken after the hearing on the motion for summary judgment, revealed new material evidence that justified reconsideration. It asserts that Kutscher's deposition contradicted his declaration and revealed his bias in favor of the Kritzman group.

The Matthews group makes no argument as to why the Kutscher deposition could not have been discovered previously and thus qualifies as new evidence. In addition, the deposition does not contradict the declaration. In his declaration, Kutscher testified to his recollection of drafting the bylaws, his belief as to what the bylaws meant, and his practice in drafting bylaws. In his deposition, Kutscher testified that he did not specifically recall his meetings with representatives of Island Landmarks while drafting the bylaws or whether those meetings took place in person or by telephone.

The trial court did not abuse its discretion in denying the Matthews's group motion to reconsider.

Affirmed.

_Spearman, C.J._

WE CONCUR:

_Leach, J._          _Appelwick, J._